JOHN B. SCHENCK et al., Respondents, v. JOHN ANDREWS, Appellant.

Under the provision of the act of 1853 (chap. 333, Laws of 1853), amending the act providing for the organization of manufacturing and other corporations (chap. 40, Laws of 1848), by authorizing the trustees of a corporation organized under said act to purchase property necessary for their business, and to issue stock to the amount of the value thereof in payment, and releasing the holders of such stock from the liability to the creditors of the corporation, imposed by the original act (§ 10), upon the holders of stock not full paid, a mere mistake or error of judgment, by the trustees, either as to the necessity of the purchase or as to the value of the property so purchased, if made in good faith and not in evasion of the provisions of the original act, will not subject a holder of stock issued in payment for the property purchased to such liability.

The provision gives the trustees a discretion, and they are to be the judges both as to the necessity for, and the value of the property; good faith and the exercise of a proper discretion and honest judgment is all that is required.

*Schenck* v. *Andrews* (46 N. Y., 589) and *Boynton* v. *Hatch* (47 N. Y., 225) limited and distinguished.

Exceptions to a charge, whether general or special, relate only to questions submitted to the jury. Questions not submitted cannot be made the subject of an exception.

Where, therefore, all of the instructions given by the court as to the questions submitted are erroneous, a general exception is sufficient, although other propositions may have been correctly stated.

(Argued October 2, 1873; decided January term, 1874.)

Appeal from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiffs entered on the verdict of a jury.

This action was brought to charge the defendant, as a stockholder in the Empire Moulding and Planing Mill Company, for machinery, etc., sold to it by the plaintiffs, after the recovery of a judgment therefor and the return of an execution, which had been issued thereon, unsatisfied.

It was claimed by the complaint that he was liable and chargeable on three grounds. 1st. Because there had been a neglect and failure to file a certificate that all the capital stock of the company had been paid, as required by the provisions of the general act of the legislature of this State (chap. 40 of the Laws of 1848) authorizing the formation of corporations for manufacturing, mining, mechanical or chemical purposes. 2d. Because the capital stock of the corporation had never been paid in to it, and that its stock was issued to the officers and projectors thereof, who received the same and paid no value therefor; and, 3d. Because the said corporation had failed to do business and was dissolved, and its property had been disposed of by its officers without authority of law.

The defendant set up as a defence that the certificate of the incorporation of the company was filed in the office of the clerk of Kings county, on the 30th day of June, 1868; that after its formation the trustees thereof purchased of one Hatch a manufactory in the city of Brooklyn and other property necessary for its business for $100,000, the value thereof, and did issue the whole of their capital stock to the vendor

thereof for such manufactory and property necessary for their business; which stock, so issued, was declared by said company, and was taken by said vendor as full paid stock; that a certificate, in accordance with the fact of such purchase (a copy of which certificate was annexed to the answer), was, on the 30th day of July, 1868, recorded in the office of the clerk of Kings county, being the county where the business of the said company was carried on; and that the same was the only certificate of the payment of stock of said company that had ever been filed by it.

On the trial of the issues in the action evidence was given on the questions whether the property so purchased (among which were five mortgages to the amount of $10,000) was necessary for the business of the company, and whether the value thereof was $100,000, being the amount of the capital stock issued therefor.

At the close of the testimony the defendant moved to dismiss the complaint of the plaintiffs. The motion was denied, and an exception to the decision was taken. The case does not state on what ground the motion was made or denied; thereupon the court charged the jury in the following terms, viz.: "Under the law applicable to this case the questions submitted to you are two. There is no dispute as to the indebtedness of the company to the plaintiffs; that is already determined in the suit brought by them against the company. The question is, whether the stockholder has made himself liable, and that involves your consideration of these two questions — Whether these mortgages, transferred by Mr. Hatch, were necessary for the company in the carrying on of its business? and, secondly, Was the property transferred of the fair value of the stock issued in payment therefor? the Court of Appeals having in this case, or another case, decided between this company and another party that the statute, in relation to the issuing of stock in payment for property, provides for the issuing of stock to the amount of the value of the property, and not simply the amount agreed upon between the parties. If you find these two issues in favor

of the defendant, then the defendant is entitled to a general verdict ; if you find against him, then the plaintiff is entitled to recover the amount of his claim, $998.53, with interest."

To which charge and directions of the court the defendant excepted generally. The jury rendered a verdict for the plaintiffs.

Further facts appear in the opinion.

The case upon a former appeal is reported in 46 New York, page 589.

*F. J. Fithian* for the appellant. Plaintiffs' failure to prove any debt against the corporation is fatal to a recovery. (*Miller* v. *White*, 50 N. Y., 137.) The evidence fails to show that the whole amount of the capital stock had not been fully paid in within the intent and meaning of the statute, or that the certificate had not been made and recorded according to provisions of the statute. (Chap. 333, Laws of 1853, § 2 ; Chap. 40, Laws of 1848, §§ 10, 11, 14.) The certificate made and recorded by the trustees is a substantial compliance with the statute. (Chap. 40, Laws of 1848, §§ 10, 11 ; Chap. 333, Laws of 1853.) The trustees were authorized to issue stock to an amount which, in the absence of fraudulent or corrupt intent to violate the statute, should be agreed upon by the parties as the value of the property purchased. (Chap. 333, Laws of 1853, § 2 ; Sedg. on Stat., 233 ; *Starkey* v. *Kelly*, 50 N. Y., 675 ; *People* v. *Utica Ins. Co.*, 15 J. R., 358.)

*Samuel Hand* for the respondents. It appearing that the property purchased was not worth one-half the nominal value of the stock issued, defendant is liable. (*Boynton* v. *Hatch*, 47 N. Y., 225.)

Lott, Ch. C. The learned judge who tried this action was mistaken in the statement made in his charge to the jury as to the questions that had been decided by the Court of Appeals in this action or in another case referred to by him.

The question before that court on the former appeal in the

present suit arose on a demurrer by the plaintiffs to the defendant's answer, upon the ground that the facts stated therein do not constitute any defence to the action; the demurrer was sustained by the City Court, and its judgment was, on the former appeal, held to be erroneous, and was reversed. The opinion therein, as reported in 46 New York, 589, was given by Judge GROVER; and it is referred to by him, as not reported, in his opinion in *Boynton* v. *Hatch* (47 N. Y., 225), also commenced in the City Court of Brooklyn (being the other case to which the learned judge who tried this had, it is conceded, reference in his charge). The statement of the facts in *Boynton* v. *Hatch*, as set forth in the report of the case, shows that testimony, as to the value of the property in payment for which the whole stock of the company was issued to the defendant, was taken at the trial; the defendant objecting on the ground that such testimony was immaterial. The referee, before whom the issues were tried, reserved his decision, but in deciding the case he excluded the testimony, holding that the question of value was not in any way material. The defendant, as is also shown by the same statement, claimed exemption from liability under chapter 333 of the Laws of 1853, on the ground that the capital stock was fully paid in by the purchase of the property mentioned in the certificate thereof referred to in the answer of the defendant therein, as that filed on the 30th day of July, 1868, and the issue of stock therefor, in which he was sustained by the referee who decided that the defendant was entitled to judgment, which was accordingly entered. An appeal therefrom was taken to the Supreme Court and it was reversed by the General Term in the second judicial district, who ordered a new trial and the case came before the Court of Appeals on an appeal by the defendant from that order, which was there affirmed. Two opinions were read for the affirmance of the order, but on different grounds: one by Judge ALLEN and the other by Judge GROVER. The order was unanimously affirmed, CHURCH, Ch. J., and RAPALLO, J., concurring in the decision for reasons assigned by Judge

ALLEN, and PECKHAM and FOLGER, JJ., concurring therein for reasons assigned in the opinion of Judge GROVER.

It appears, by reference to the opinions, that Judge ALLEN placed his conclusion on the ground that the evidence excluded, as above stated, was competent to show that the purchase of the property and the issue of the stock therefor were fraudulent, and an evasion of the law requiring an actual payment of the capital stock of the company in money or its equivalent, in value, in property necessary for its business. In his consideration of the question he said: " While a difference of opinion as to the value of the property might not alone be sufficient to impeach the transaction, the actual value of the property is an important item of evidence, and with other circumstances may be sufficient to establish fraud; while without some evidence as to the value it would ordinarily be difficult to show fraud." He then refers to other matters and circumstances to show that in connection with them, the evidence of value was material in that case.

The general tenor of the opinion of Judge GROVER is to the effect that proof of the inadequacy of value, irrespective of the question of fraud and an intention to evade the statute, was competent. He, after saying that the plaintiff's evidence tended strongly to show that the property purchased of the defendant was worth only forty per cent of the price paid for it, added: " The referee erred in holding this evidence immaterial, and refusing to pass upon the question as to the value of the property." It is evident, from the examinations of those opinions, that the only question actually decided in the case was, that the evidence of value given was competent and was erroneously excluded by the referee. It appears to be proper, in this connection, to state that Judge GROVER concluded his opinion given on the question of the sufficiency of the answer in the present case, on the former appeal, with these remarks: " Whether the property purchased was necessary to the business of the company, and whether the price paid therefor was no more than its fair value, are questions of fact to be determined like other ques-

tions, if controverted. The certificate of these facts filed, etc., pursuant to the act is not made conclusive evidence of the facts in question. In the present case, the demurrer admits them to be true, and, if true, the defendant is not liable to the creditors of the company under section 10 of the act of 1848." The last paragraph shows what the true and only point decided on that appeal was, and that the previous part of the statement was not involved in the decision actually made.

It appears from the preceding views that the question presented by the exception to the judge's charge, above set forth, has not been decided by the Court of Appeals; it is, therefore, properly open to examination and review. I will proceed to examine it on that assumption. In doing this, it is proper to refer to the provision of law under which it is sought to charge the defendant with liability. The general act authorizing the formation of corporations for manufacturing, mining, mechanical or chemical purposes, passed February 17, 1848, chapter 40 of the Laws of that year, under which the company in which the defendant was a stockholder was incorporated, provides by section 10 thereof that all the stockholders of every company incorporated under it shall be severally, individually liable to its creditors to an amount equal to the amount of the stock held by them respectively, for all debts and contracts by such company, " until the whole amount of the capital stock fixed and limited by such company shall have been paid in and a certificate thereof shall have been made and recorded, as prescribed by the following section (§ 11)," which prescribes as follows: " The president and a majority of the trustees, within thirty days after the payment of the last installment of the capital stock, so fixed and limited by the company, shall make a certificate stating the amount of the capital so fixed and paid in; which certificate shall be signed and sworn to by the president and a majority of the trustees, and they shall within the said thirty days, record the same in the office of the county clerk of the county wherein the business of the said

company is carried on." It is then provided and declared by section 14 of the act, that "nothing but money shall be considered as payment of any part of the capital stock." That continued to be the law until June 7th, 1853, when an amendatory act was passed (chapter 333 of the Laws of that year), the second section of which is in the following terms, viz.: "The trustees of such company may purchase mines, manufactories and other property necessary for their business, and isssue stock to the amount of the value thereof in payment therefor; and the stock so issued shall be declared and taken to be full stock and not liable to any further calls; neither shall the holders thereof be liable to any further payments under the provisions of the tenth section of the said act; but in all statements and reports of the company, to be published, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect, according to the fact." It was held and decided by the Court of Appeals, on the former appeal in this case, that this amendment applied to the original capital stock of the company, as well as to any increase thereof authorized by the original act, and, that the holder of such stock was relieved from liability to creditors, to the same extent as if it had been issued for money, paid therefor. (See *Schenck* v. *Andrews*, 46 N. Y., 589.)

The provisions to which I have referred clearly show that, under the original act, stockholders in a corporation formed under it, were liable to its creditors until the whole of its capital stock was paid in cash, and a certificate of the fact was recorded as required by the act; but the amendatory act authorized other property to be substituted in place of money, as therein specified; and the defendant's liability in the present action is to be determined by the construction to be given to that act. It is conceded that no portion of the capital stock of the company in question (which was fixed at $100,000, divided into 200 shares of $500 each) has been paid in money, but property was purchased by its trustees, for which full stock had been issued to the vendor thereof, part of which was

subsequently transferred by him to the defendant. A certificate of the fact of such purchase was made and recorded, which (no question being raised on the trial as to its sufficiency) must now be assumed to have been executed in compliance with the requirement of the statute.

Proof was given, with the object of showing that five mortgages on real estate, of $2,000 each, included in the purchase, were not necessary for the business of the company, and that the value of the whole of the property bought was less than the amount of the stock so issued in payment therefor. Thereupon the jury were instructed by the court that the decision of the case involved the consideration of these two questions: First, "Whether those mortgages were necessary for the company in the carrying on of its business," and, second, "Was the property transferred of the fair value of the stock issued in payment therefor," adding that the Court of Appeals had decided that the statute in relation to the issuing of stock, in payment for property, provides for its issue "to the amount of the value of the property, and not simply the amount agreed upon between the parties;" and if they found those two issues in favor of the defendant, then he was entitled to a general verdict, but if against him, then the plaintiff was entitled to recover the amount of his claim, with interest.

The above charge presents the question whether a stockholder in a company, organized under the act referred to, can be charged with a debt due to a creditor, on the opinion of a jury, based and formed on the testimony of others (conflicting it may be) that a portion of the property purchased by its trustees, for which stock was issued in payment, was not *indispensable* for carrying on its business, or that it was not fairly worth the price or sum paid or allowed therefor; or, presenting the subject in another form, whether a mere mistake or error of judgment by the trustees, either as to the necessity or value of property, purchased by them in good faith, and not in evasion of the original act requiring payment

of the whole capital in money, will subject a *stockholder* to such a liability. I think not. The original and the amendatory acts are to be read and construed together. While the former required all the capital to be paid in money, the latter so far changed that requirement as to permit the whole, or a portion thereof, to be paid by a transfer of such property, equivalent in value, and necessary for the business of the company, as the trustees deemed advisable. It gave *them* the right and power, in the exercise of *their* discretion, to take property and issue stock therefor, for which money, paid in for stock, would have been appropriated. Its effect, which was consistent with the *object* of the original act, was to dispense with the payment of money where mines, manufactories, or other necessary property could be beneficially received for the use of a company, on the issue of stock therefor, to the amount of its value. The authority given to the *trustees* (using the language of the act), "to purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor," implied that *they* were to be the judges, both as to the necessity and value of the property to be purchased. *They* were the agents, on behalf of the company, for that purpose, and the discharge of their duty called for the exercise of *their* discretion and judgment (having reference and due regard to the interests of those represented by them) in determining what should be bought, and the price to be paid therefor. It cannot be properly claimed, in giving a construction to the power conferred on them by the amendatory act, that the property purchased, and every part thereof, should be *indispensable* for the prosecution of the business of the company, or that the sum allowed therefor should be its *precise, actual,* intrinsic value (and that to be determined by the verdict of a jury), for the exemption of a stockholder from the liability which the original act imposed, in case the whole capital was not actually paid in cash. Such a construction would defeat the evident object of the law, which clearly was to encourage the formation of companies, by the

appropriation of manufactories, mines and other property, proper for their business, and at a fair valuation, instead of money, as a capital therefor. No person could be expected to become a stockholder, and pay his money or appropriate his property, and he, nevertheless, be held liable to a contribution in favor of creditors, to the extent of the stock issued for such property, if a jury should, subsequently, and at an indefinite and unlimited period thereafter, find that the trustees had, under a mistake, but in an honest exercise of their judgment, concluded, erroneously, either that the property was in fact, as disclosed by subsequent events, *not absolutely indispensable*, or *actually worth* the *full* sum allowed for it. There are many circumstances that affect *values*. The time of the purchase, the demand for the article sought for, a limited supply, the credit given, a panic in the money market, and various other matters, have their influence and effect, and which cannot be properly appreciated, at a remote day, after these causes have ceased to operate. An illustration may be given by reference to the difference in prices of articles needed during the late war and the present time. Indeed, our experience shows that prices are more or less fluctuating, even at short intervals of time, and different juries would be very likely to disagree, on the same evidence, as to the value of an article on a specified day, two or three years previous to the time they were called to pass on the question.

The construction given to the act by the court below, in its effect, imposes a *penalty* on the *stockholder* in a company for a mistake and erroneous judgment of its trustees in the faithful and honest discharge of their duties. There is nothing in the language of the law that requires such an interpretation to be given to it; nor does the protection of creditors of the company require it. Every person who deals with it has the means of ascertaining whether its capital has been paid, in money or in property, and he is under no obligation to sell it any goods, if he finds that it or any portion thereof, has been paid in property. Due prudence and care on his part, will enable him to ascertain its

nature and value, and if he should be induced to hazard a sale of goods on credit, instead of money paid down, by high profits, he has no right to ask a court for relief from the consequence of his avarice or folly, in making a sale without payment at the time of the price agreed upon.

It appears by the opinion given by Judge GROVER in *Boynton* v. *Hatch* (*supra*), that there was a dissenting opinion by one of the judges of the Supreme Court at General Term, in that case, in which he stated that, the rule of liability declared by that court (and also maintained by Judge GROVER himself), would "prevent sales of stock by its holders, as the purchasers, to protect themselves from liability for the debts of the corporation, will be bound to prove that the property purchased, in payment for which the stock was issued, was worth the amount of the stock so issued." The learned judge did not deny or attempt to refute the statement or proposition. It was clearly undeniable and incapable of refutation, but he disposed of it summarily, by saying: "The answer to this is, that the statute provides for legitimate business enterprises and not for the sale of the stock of fraudulent corporations; had the latter been the design, the statute should have read: to issue stock in payment to the amount agreed to be paid for the property, instead of to the value of the property." I agree with him, as to the object of the statute, but do not concur in what his answer implies, that an agreement by trustees, to pay for property, made and entered into in good faith, and in the exercise of a proper discretion and honest judgment as to its value, but as to which they formed an erroneous opinion, necessarily shows that the transaction was not a "legitimate business enterprise," or that the corporation, issuing its stock for such property was a "fraudulent corporation."

The judge who tried the case under review, acting on an erroneous assumption as to what the Court of Appeals had decided, gave the instructions which have been the subject of the previous examination by me, and the views, above expressed thereon, show that he erred in giving them.

It follows that the judgment entered on the verdict, and that in affirmance thereof, must both be reversed and a new trial ordered, costs to abide the event.

REYNOLDS, C. It is very clear that the judgment of the Court of Appeals in *Boynton* v. *Hatch* (47 N. Y., 225) is not decisive of the case at bar, for nothing was there decided save that, in a controversy like the present, it was error to exclude evidence of the value of the property put in as a part of the capital stock of the corporation. In that case the referee had held that the value of the property was immaterial, and refused to pass upon the question, and for that error alone judgment was ordered for the plaintiff. In disposing of that case, three judges appeared to be of the opinion that, in an action by a creditor of a manufacturing corporation against a stockholder of stock originally issued, the creditor may impeach the transaction for fraud, and if he can show that the stock was fraudulently issued, and in evasion of the law, he may recover against the original stockholder as if no payment had been made or certificate filed. Three other of the judges held, that, where all or a portion of the capital stock is paid in, in property, the certificate required to be filed by section 2 of the act of 1853 must state the value of the property; that an agreement of the company to pay more than the value of the property does not protect the stockholder from liability under the tenth section of the act of 1848, and it may be claimed that it was also held not necessary in such case to allege or prove fraud. But I do not think the opinion of Judge GROVER necessarily goes to that extent, for he says that no such question was raised below, and that fraud was sufficiently alleged, and that the proof tended strongly to show that the property was not worth more than forty per cent of the price paid for it. As before said, all the judges agreed to order judgment for the plaintiff, for the reason that the referee rejected all evidence of the value of the property and declined to pass upon the question. Whichever view may be taken of the proposition upon which the learned judges apparently disagreed, the

decision reached was undoubtedly correct, for upon the question of fraud evidence of actual value would be always competent, and, in some cases, quite controlling; and if the validity of the organization of such corporations, where property is put in as capital, is to be tested by the opinions of witnesses as to its value, of course the evidence is absolutely indispensable.

After an attentive examination of the question, I concur in the views of Judge Allen expressed in his opinion in *Boynton* v. *Hatch* (47 N. Y., 228). Any other rule would, I think, lead to extensive mischief and uncertainty, and, in fact, practically paralyze the amendment of the act of 1848 adopted by the legislature of 1853; which was intended to facilitate the proper organization of manufacturing corporations rather than to set the entire system afloat upon a sea of uncertainty. If, in fact, it had appeared that the entire $100,000 of the capital of the corporation had been paid in, in cash, and the certificate filed, no personal liability of a stockholder could for a moment have been claimed. And if, in the next hour thereafter, the trustees of the company, in corporate meeting duly convened, had agreed to purchase the property, the value of which is in dispute, for $100,000, and paid the entire capital for it, a stockholder could not be made personally liable, under the statute, because the trustees had committed an error of judgment as to value, and not even for fraud, unless the stockholder was a party to it. The liability sought to be enforced in the present case is one imposed by statute, and does not otherwise exist. If the conditions of the statute have been observed, there remains no personal liability by mere force of the statute itself. In a case where the stockholders of a manufacturing corporation, organized under the act of 1848 as amended in 1853, were numerous, and a part had paid for their stock in cash and another portion had put in property, at a valuation agreed upon between them and the trustees, it would be a very harsh rule that would subject the stockholders paying in cash to personal liability for the debts of the company, if it could be maintained that the trustees

had formed an erroneous judgment as to the value of the property received as a part of the capital; and yet we are asked by the plaintiff to approve such a result. I entirely agree, that if the promoters of a corporation of this character shall, with a view to defraud, fill up the capital stock by putting in property at grossly exorbitant values, they are not to be exempted from the personal liability imposed by the statute. In such case, they ought to respond in damages to the extent of the wrong they design to accomplish. But if, in the furtherance of an honest purpose, they fall into error of judgment in placing a pecuniary value upon property supposed to be needful for the success of the enterprise, I think a different rule should prevail. And I think it need only be suggested, in support of this position, that, upon the question of the value of property, and more especially that adapted to mining, mechanical and manufacturing purposes, a very wide difference of opinion may honestly exist among the most intelligent of men familiar with such operations. There is no exact mathematical value which can be applied to mines or minerals in the bowels of the earth, or to mechanical contrivances or manufacturing establishments, when their development is sought for by associated wealth. It is matter of the commonest observation, that the most intelligent and conscientious of men, upon such questions, entertain widely different opinions; and it would be a fatal blow aimed at every such enterprise, if those who honestly risk their capital in such adventures shall be held as guarantors to all creditors for its eventual success.

I find nothing in the statute which requires that the certificate to be filed under section 11 of the act, shall state the "value" at which any property has been put in as a part of the capital and received as such, as is suggested by Judge GROVER, in his opinion in *Boynton* v. *Hatch* (*supra*). If such a statement is to have no effect as his opinion seems to indicate, it is of little account whether it be inserted or not. If it is no more than *prima facie* evidence of value, it cannot be regarded as of substance, for in one view, as I

think properly, it may be assailed for fraud and in another it is valuless, if a credible witness can be found, who, entertains, for any reason, a different opinion of the actual value of the property. These views lead to the reversal of the judgment of the court below, but before we can render that decision other things must be considered.

It is apparent, from an inspection of the record, that the case was very loosely tried, on the part of the defendant, at least. The recovery of a judgment by the plaintiff against the corporation was admitted by the defendant in his answer, and the course of the trial plainly indicates that it was conceded, that the recovery was had for a debt justly due from the corporation to the plaintiff. The case of *Miller* v. *White* (50 N. Y., 137), cannot, therefore, help the defendant on this appeal.

At the close of the evidence on the part of the plaintiff, the defendant moved to dismiss the complaint of the plaintiff, without assigning any specific reason for the motion and it was denied and the defendant excepted. The court thereupon submitted two questions for the consideration of the jury ; one, whether the mortgages transferred by Hatch were necessary for the company in carrying on its business, and the other, whether the property transferred was of the fair value of the stock issued in payment therefor. If these issues were found by the jury in favor of the defendant, he was entitled to the verdict, and if not, the plaintiff was entitled to recover the amount of his demand, with interest. To this the defendant excepted and the jury returned a verdict for the plaintiff. I am inclined to the opinion that, upon the pleadings and evidence, the plaintiff was not entitled to recover, and the complaint should have been dismissed. No actual fraud in the organization of the Empire Moulding and Planing Mill Company was alleged, or proved or pretended. The case was put to the jury, and the plaintiffs recovered solely upon the naked proposition that, in the opinion of one or more witnesses, the property put in as the capital of the concern was not of the value agreed by the company to be paid for it ; and even if

that was the fact, and the error of the trustees was an error of judgment only, I have already said that I do not think the personal liability of the stockholder is fixed by the statute. If this be correct the plaintiff's action failed in its whole scope and meaning, and a general objection was sufficient.

It is also said that the exception to the charge of the judge to the jury is too general to raise any question, but I have a different opinion. But two questions were submitted to the jury, and, I think, the instructions were erroneous as to both. It is quite too much to say as is said in this case, in substance, by the learned counsel for the plaintiff, that a general exception to a charge is an exception to every word in it, and, therefore, bad, if there be one word of truth in the whole charge which, in the very baldest cases, may ordinarily be taken for granted. Exceptions to a charge, whether general or special, relate only to questions submitted to a jury, and to nothing else. Questions not submitted cannot be made the subject of an exception. It would be quite absurd to say that the exceptions in this case were aimed at the observation of the judge that "there is no dispute as to the indebtedness of the company to the plaintiff;" and if it shall be said that the exception might have pointed at the observation of the learned judge to the jury that "the Court of Appeals having in this case, or another case, decided between this company and another party that the statute, in relation to the issuing of stock in payment for property, provides for the issuing of stock to the amount of the value of the property, and not simply the amount agreed upon between the parties." I should say that this observation was founded upon a misconception of what the Court of Appeals had decided, and calculated to mislead the jury in a very material degree. We have no means of information as to what the Court of Appeals has decided in this or any other case relating to the same company, except the reported decision on a demurrer to the answer in this case (46 N. Y., 589) and that of *Boynton* v. *Hatch* (47 N. Y., 225), and I am quite sure that no such

proposition was in these cases decided as was stated by the learned judge to the jury in the case at bar.

As to the necessity for the mortgages assigned by Hatch to the company to enable it to carry on its business, the evidence was not conflicting. They might or might not be necessary and convenient, depending to a large extent upon future events. They were not claimed to be of less pecuniary value than they represented; and it was not for the jury to say that they were not a legal equivalent under the statute for so much of the capital stock of the company as was issued on their account.

As to the other question submitted, if verbal criticism could be indulged, it might be said that the proposition was put in a singularly inaccurate form : " was the property transferred of the fair value of the stock issued in payment therefor ?" When we consider that the entire capital stock of the company was issued in payment for the property transferred, it is difficult to distinguish between the value of property and the stock issued; for, as the company had no other assets or capital, the stock would be worth just as much as the value of the property, and no more and no less. If there was any question at all to be considered upon the issues in this case, it was the actual value of the property put in as a part of the capital of the company, and not the amount of stock given in payment for it; and no such issue has been passed upon by the jury. For error in the charge, therefore, there should be a new trial. If this were otherwise, I should be in favor of a new trial for the error in rejecting evidence offered by the defendant in relation to the value of the property in respect to the services of Hatch in putting up the machinery purchased, if not even the supposed value of the good-will of the business which Hatch, to some extent at least, had inaugurated. (*Starkie* v. *Kelly,* 50 N. Y., 677; *Stickney* v. *Allen,* 10 Gray, 352.) And I am not able to see why the plaintiff should have been permitted to show that after the failure of the company its property had been sold out at a very low figure. It could only have been offered upon the question of the value of the property put in as a part of the capital of the

corporation; and upon that could have no legitimate bearing, and probably tended to mislead the jury.

For the numerous errors indicated there should be a new trial, with costs to abide the event.

All concur.

Judgment reversed.