NORTON DOUGLASS, Respondent, v. JOHN B. IRELAND, Appellant.

To charge the holder of stock of a manufacturing corporation, issued upon and for the purchase of property, individually for the debts of the company, it is not enough to prove that the property was purchased at an over valuation through a mere mistake or error of judgment on the part of the trustees; it must be shown that the purchase was in bad faith and to evade the statute.

All that is necessary, however, to establish legal fraud, which will take the stock so issued out of the protection of the act of 1853 (chap. 333, Laws of 1853), is to prove, 1st. That the stock exceeded in amount the value of the property in exchange for which it was issued; and, 2d. That the trustees so issued it deliberately and with knowledge of the real value of the property; no other fraudulent intent need be alleged or proved.

In an action to charge the stockholders, the value of the property must be determined, and evidence thereof is competent.

In such an action it appeared that the entire capital stock of the corporation, $300,000, was issued to H., one of its trustees, in consideration of the assignment to the company of two executory contracts for the purchase of mining property, upon which nothing had been paid; the contract price was $40,000. One-third of the stock was immediately retransferred to the company, to be sold to raise a "working capital." This was sold from forty to sixty cents on a dollar. Defendant knowing of, and participating as trustee of the corporation in the transaction, purchased $25,000 of said stock at forty cents. The jury found the value of the property to be $68,000. *Held,* that the evidence justified a finding of fraud, and was sufficient to sustain a recovery.

Also, *held,* that an action brought against defendant and other trustees under the general manufacturing act (§ 12, chap. 40, Laws of 1848), to to charge them with the same debt because of failure to make the annual report, was not a bar to this action.

(Argued February 20, 1878; decided March 19, 1878.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict.

This action was brought against defendant as a stockholder of "The Black River Iron and Mining Company of New York," a corporation organized under the general manufacturing act (chap. 40, Laws of 1848), under section 10 of

said act, to recover certain debts of the corporation, on the ground that his stock was not paid up.

The complaint alleged, in substance, the incorporation of said company with a capital stock of $300,000, with five trustees, one of whom was defendant, and John Horton, another. That at the time of the incorporation Horton had a contract for the purchase of a furnace and mining premises, and one for the purchase of standing timber in the vicinity of the furnace, upon which contracts nothing had been paid, and their fair value did not exceed $20,000; which contracts Horton assigned to said company, receiving therefor the whole of the capital stock; that Horton thereafter divided $200,000 of said stock between himself and the other trustees, and defendant well knowing the facts received over $5,000 thereof; that said stock has never been paid in in any other way, and that no certificate as required by section 11 of said act has been made and recorded.

Upon the trial evidence as to the value of the property was received under objection and exception. The question as to value was, by consent, submitted to the jury; the other questions were decided by the court. The jury found the value of the property to be $65,000. The court found the incorporation of the company with a capital of $300,000, in 3,000 shares, the issuing and transfer of its capital stock in payment for the assignment of the two contracts substantially as alleged in the complaint; also, that Horton, in pursuance of the agreement with the company, on or about the same date, transferred back to the company 600 shares of the capital stock to be sold to pay the contract-price for the furnace property, which was $30,000, and also transferred back 1,000 shares of the capital stock in pursuance of the same agreement "for the purpose of enabling said company to raise a working capital by the sale of the same;" that defendant, knowing of and participating in the transactions, purchased of the company 250 shares for the sum of $10,000; that the value of the property was so disproportioned to the nominal value of the stock as "to take the

case out of a sound discretion exercised by the trustees," and as conclusions of law, he found that the transaction was a fraud upon the law and cannot be upheld as a mistake or innocent misunderstanding of the value of the said property, " that the capital had not been paid in as required by the statute and that defendant was liable."

Further facts appear in the opinion.

*Francis Kernan* and *Nicholas E. Kernan,* for appellant. Mere inadequacy of price in a sale of property does not establish fraud as matter of law. (*Jaeger* v. *Kelly,* 52 N. Y., 274.) An honest mistake or error of judgment as to the value of the property will not *per se* subject defendant to a personal liability. (*Schenck* v. *Andrews,* 57 N. Y., 133, 141, 144, 147; *Boynton* v. *Andrews,* 63 id., 93.) Liability under section 10 of the act of 1848 (chapter 40) does not attach to stock issued for property under the act of 1853 (chapter 333). (*Schenck* v. *Andrews,* 46 N. Y., 589.)

*C. D. Adams,* for respondent. The pretence that the stock was paid in, and the method used to found such pretence upon, was an evasion of law, and the issue of the stock was fraudulent, and as defendant knew this he was liable. (*Boynton* v. *Hatch,* 47 N. Y., 255; *Schenck* v. *Andrews,* 57 id., 133.)

ALLEN, J. The question upon which this court divided in *Boynton* v. *Hatch* (47 N. Y., 225) has been definitely settled by the later decisions of this court as well as the Commission of Appeals. The views I there expressed, and which were agreed to by two of my brethren, have been approved, and it is now settled that to charge a holder of stock, issued upon and for the purchase of property, individually for the debts of the company, it is not enough to prove that the property has been purchased and paid for at an over valuation through a mere mistake or error of judgment on the part of the trustees, but that it must be shown that the pur-

chase at the price agreed upon was in bad faith and to evade the statute. The transaction may be impeached for fraud, but not for error of judgment or mistaken views of the value of the property, inasmuch as good faith and the exercise of an honest judgment is all that is required. (*Schenck* v. *Andrews*, 57 N. Y., 133; *Boynton* v. *Andrews*, 63 id., 93.)

The entire capital stock of the "Black River Iron and Mining Company" was issued to Horton, one of the trustees, in consideration of the assignment to the company of two executory contracts ; the one for the purchase of a furnace property and premises, and the other of certain woodlands. No part of the capital stock was paid in money, or otherwise than by the assignment of the contracts referred to, and no certificate has been filed as required by section 11 of chapter 40 of the Laws of 1848 that the capital stock has been paid in.

As was said in *Boynton* v. *Hatch* (*supra*), sections 10 and 14 of the general law of 1848 (*supra*), and section 2 of chapter 33 of the Laws of 1853 (*supra*), are *in pari materia*, and must be read together as parts of the same general law, and the law is that the entire capital stock of monied and manufacturing corporations organized under the general laws for that purpose must be paid in money, and a certificate thereof filed by the trustees, as required by the law of 1848, and stockholders remain individually liable for the debts of the company until these conditions of the statute are complied with, subject only to the exception engrafted upon the prior general law by the act of 1853, to the effect that the trustees of such companies may in good faith purchase property necessary to their business, and issue stock to the amount of the value thereof in payment therefor, and the holders of stock thus issued are exempt from liability for the debts of the corporation under section 10 of the prior law. The stock issued in payment for property may be a part or the whole of the capital stock contemplated by the articles of association, or of new stock created for that purpose. (*Schenck* v. *Andrews*, 46 N. Y., 589.)

The statute, however, only exempts stockholders from liability under section 10 of the original statute in respect of stock issued in good faith, pursuant to the privilege conferred by the supplementary act of 1853 ; that is, to the amount of the value of property in payment for which it is issued. A deliberate and advised over valuation of property thus purchased and paid for is a fraud upon the law, and a violation of the condition upon which the exemption of stockholders from liability under the provisions of the original statute is made to depend. It is in direct violation of the policy as well as of the terms of the law which demands payment, either in money or property at its value, of all the capital stock of the company, as a condition of immunity to the stockholders from liability for debts of the corporation. The payment of an amount for property in excess of its value deprives creditors and the public of the security contemplated by the statute, and thus a fraud is perpetrated as well upon the law as upon creditors. The fraud is consummated by the issue of stock as full paid stock, under the act of 1853, which has not been fully paid for in value by the property for which it is issued, and it does not depend upon any fraudulent intent other than that which is evidenced by the act of knowingly issuing stock for property to an amount in excess of its value. All that is necessary to establish the legal fraud and take the stock issued out of the immunity assured to stock honestly issued in pursuance of the act of 1853 is to prove two facts : 1st. That the stock issued exceeded in amount the value of the property in exchange for which it was issued ; and, 2d. That the trustees deliberately, and with knowledge of the real value of the property over valued it, and paid in stock for it an amount which they knew was in excess of its actual value. The value must be determined in any action in which the question arises upon such evidence as may be given, having respect to the circumstances and the nature of the property, and the *scienter* and guilty action of the trustees may be proved either directly or inferred from circumstances.

The complaint does not specifically *in totidem verbis* charge guilty knowledge of the value of the property, and a fraudulent intent upon the trustees in the purchase from Horton; but it does aver facts, which, if proved, would authorize the inference of every fact necessary to sustain the action. The purchase of property, the value of which did not exceed $20,000, from Horton, one of the trustees, and the issue of the entire capital stock of the company to the amount of $300,000 therefor, is alleged, with an averment that $200,000 of the stock thus issued was divided between Horton and the other trustees, of whom the defendant was one, and that the defendant, well knowing the facts, received upon such division more than $5,000 of the stock at its par value, and still holds and owns the same. The seller of the property may well be presumed to know its value, and knowledge by the defendant of all the facts stated, including the alleged value of the property, is averred. It is a very significant fact, as alleged, giving character to the transaction, that the seller of the property was willing to and did divide with his co-trustees, the bargainers, two-thirds of the nominal consideration he received for it. This is entirely inconsistent with the idea that the sale was a *bona fide* sale for the supposed actual value of the property, and without explanation would be conclusive evidence that the purchase by the trustees was not, in the exercise of an honest judgment and the discretion vested in them, at the real or supposed value of the thing purchased; but that under color of a compliance with the provisions of the act of 1853, the purchase of the property and the issue of the stock was a palpable evasion of, and fraud upon, the law. The complaint does, in its substantive facts, make a case entitling the plaintiff to recover, by showing that the stock held and owned by the defendant was not issued for property purchased in good faith for the business of the company, and for the amount of its value, but was issued in fraud of the law, and of those who should afterwards deal with and become creditors of the corporation. The evidence of the value of the property was, therefore, com-

petent, and the objection to its admission was properly over-ruled.

The facts found by the judge were warranted by the evidence, and sustain the judgment founded thereon. The jury, to whom the question of value was submitted, found the value of the property to be $64,000, and this was a liberal estimate upon all the evidence. The other questions of fact, and the whole case upon the law, were submitted to the judge as upon a trial by the court, and it is found as a fact that the value of the property was so disproportionate to the nominal value of the stock issued as to take the case out of a sound discretion exercised by the trustees, and as a conclusion of law that the transaction was a fraud upon the law, and not to be upheld as a mistake or innocent misunderstanding of the value of the property, and that the capital stock of the company had not been paid in as contemplated by law.

The property was held by Horton, under executory contracts of purchase, upon which nothing had been paid; the purchase-money being wholly unpaid. The contract-price for the furnace property was $30,000, and the contract was made but about a year before the sale to the company. The contract for the woodland had been entered into but about five months before the sale to the company, and was for $10,000, to be paid for as the wood should be cut. One-third of the stock issued was immediately retransferred to the company, to be sold by it to raise a "working capital," and enable the company to prosecute its business, and this stock was sold at prices ranging from forty to sixty cents on the dollar of its par value, the defendant buying his at the lowest price named. In this sale of stock by the corporation to the defendant we have the estimate of both buyer and seller — that is, of all the trustees of the company of the value of the property acquired and owned by the company, and represented by the nominal capital of $300,000. By that sale and purchase they fix the value of the property at only $120,000, which is nearly double the value proved

upon the trial and found by the jury. The defendant cannot complain if the property is valued at his own price.

The surrender and re-transfer of $100,000 of the stock to the company, without consideration, is some evidence that the $300,000 was not regarded as the value of the property, but that it was so treated with a view to absorb the entire capital stock, and the sale of the stock received by the company at the prices stated was very persuasive evidence of the opinion entertained by the trustees of the value of the property as represented by the stock. The learned judge, before whom the case was tried, was clearly right in his views of the transaction.

The action against the defendant and others, the trustees of the company, for not making the report required by section 12 of the general act (*supra*), although brought to recover the same debts, is not a bar to this action. The two actions are not for the same cause ; they cannot be sustained upon the same evidence ; they are to enforce different liabilities, and the judgment in each is different.

The judgment must be affirmed.

All concur, except CHURCH, Ch. J., not voting.

Judgment affirmed.