HUDSON RIVER AND WASHINGTON COUNTY MIDLAND RAILROAD COMPANY, Respondent, *v.* DE WITT C. HANFIELD, Appellant, Impleaded with TURNER A. BEALL.

*Corporation — contract to pay for the construction of a railroad in advance by the issue of bonds and stocks to the contractor — it is not invalid under section 42 of the Stock Corporation Law — a contract made and acknowledged by the president of a corporation binds it.*

A contract by which a railroad company agrees to pay for the construction of a railroad by issuing all its bonds and the greater part of its stock to the contractor and covenants to make such payments in advance, is not, where there is no evidence showing that the par value of the stock and the market value of the bonds was greater than the value of the contract obligation received therefor to build the road, invalid under section 42 of the Stock Corporation Law (Chap. 564 of the Laws of 1890, as amended by chapter 688 of the Laws of 1892), providing that "no corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purposes of such corporation. No stock shall be issued for less than its par value. No such bonds shall be issued for less than the fair market value thereof."

Where the president of a corporation executes on behalf of the latter a contract of such a nature as the corporation could authorize him to make or could ratify

if made, and it is acknowledged by the president assuming to act for the corporation under the authority of its board of directors, the contract is binding upon the corporation unless it shows affirmatively the president's lack of authority.

MERWIN, J., dissented.

APPEAL by the defendant, De Witt C. Hanfield, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Washington on the 3d day of October, 1898, upon the decision of the court rendered after a trial before the court without a jury at the Washington Trial Term, adjudging that certain contracts for the construction of the plaintiff's railroad are void, and that the defendants deliver to the plaintiff 1,500 shares of the capital stock of the plaintiff and $175,000 of its bonds.

*L. Laflin Kellogg* and *Alfred C. Petté*, for the appellant.

*Thomas O'Connor*, for the respondent.

LANDON, J.:

The main issues were that the plaintiff's president had, without authority, made contracts with the defendant Hanfield for the construction of its railroad, and had paid him in advance the contract price therefor in plaintiff's bonds and stock; that the plaintiff had performed and the defendant had not; that the defendant had delivered some of the bonds and stock to the defendant Beall, and judgment was asked for the return to plaintiff of such stock and bonds.

The resolution of the plaintiff's board of directors of November 21, 1898, was as follows:

"*Resolved*, That Dudley Farlin, the president of this company, be and is hereby authorized and empowered to contract and agree in the name of this company and to execute any and all contracts, agreements and papers required therefor, with any responsible contractor or contractors in good standing, to construct and equip, in part or in whole, the railroad of this company, with its stations, terminals, switches and spurs, and the purchase and procuring any and all rights of way and property required for said railroad and its completion upon such terms, conditions and prices in cash, in stock and in bonds of this company as in his best judgment may be for

the most immediate construction, equipment and completion of said railroad and to the best interests of said company."

The resolution was an ample authorization of its president in its behalf to enter into the contract of June 22, 1897, with the defendant Hanfield for the construction of its railroad. The complaint alleges, but no evidence supports the allegation, that the defendant was not a responsible contractor in good standing.

The subsequent contract made by the president in the plaintiff's behalf October 15, 1897, for the extension of the defendant's time of performance was also within the authority conferred by the resolution. The attempt to construe the resolution in such way as to deny the authority exercised under it by the plaintiff's president is a denial of the scope and meaning of its terms, resorted to after recognizing and ratifying the contract by accepting some of its benefits, and because of its non-performance, and after a later attempt to revoke its formal ratification. Besides, all the contracts were duly acknowledged by the president as acting for the company under the authority of its board of directors. They were all such as the corporation could authorize its president to make, or ratify after they were made, and, therefore, binding upon the corporation unless it showed affirmatively the lack of authority. (*Jourdan* v. *Long Island R. R. Co.*, 115 N. Y. 380; *Patterson* v. *Robinson*, 116 id. 193; *Hastings* v. *B. L. Ins. Co.*, 138 id. 473; *Oakes* v. *C. W. Co.*, 143 id. 430.)

The plaintiff's line of railroad was, including sidings, to be about eight miles long. Its authorized capital stock was of the par value of $175,000, and it issued bonds to the amount of $175,000.

By the first contract the plaintiff agreed to pay the defendant all of said bonds and $150,000 in said stock, the $150,000 in stock and $100,000 in bonds upon signing the agreement; and such payment and delivery were made to the defendant on or soon after that day, and the balance of the bonds in installments as the work progressed. The plaintiff had disposed of $25,000 in stock to other parties, but what it got for it does not appear. It has no property except a few strips of right of way and its maps and profiles.

By the first contract the plaintiff agreed to "furnish, at its own cost and expense, and at such time or times as not to delay the execution of the work of this agreement mentioned and referred to, all

the lands now or hereafter laid out and designated by the chief engineer of the party of the first part for rights of way as the said lands may be required for the construction of the railroad covered by this agreement."

It was not shown, nor is it found, that the plaintiff made proper performance in this respect. It was shown that "the largest part by far of the rights of way have never been obtained." And it was shown that the defendant repeatedly requested performance by the plaintiff in this respect, and that, without a continuous right of way, the trouble of construction would be "doubled up."

By the first contract the defendant Hanfield was to settle and discharge existing indebtedness of the plaintiff not exceeding $5,600. The defendant paid $1,200 upon this item of the contract.

Before the third contract was made, the defendant Hanfield and the defendant Beall (who does not appeal) made a contract by which Hanfield was to deliver to Beall $138,000 in the plaintiff's bonds, and $120,000 in its capital stock, and in consideration thereof Beall agreed to "procure to be executed and delivered valid contracts with reputable and solvent firms of individuals providing for the full construction and completion within the time named (viz., May 1st, 1898) of the said line of railroad, and will agree out of the proceeds of the securities" aforesaid to pay in full therefor, Hanfield to furnish the right of way. But if Beall should fail to procure and deliver such contracts, and the prosecution of the work should not be actively begun within thirty days, Beall should return the securities to Hanfield, and the contract should cease and determine.

By the third contract the plaintiff by its president agreed with Hanfield and Beall that Hanfield should receive immediately the $175,000 in bonds, and the $150,000 in stock, instead of in installments as specified in the first contract; and referring to the contract between Hanfield and Beall, the plaintiff agreed that "the same is accepted and approved by the said railroad company," and that the plaintiff will not hinder the performance thereof, but will "lend the best efforts of its officers and servants to the performance of the same."

The substance of these last two contracts was that Hanfield should deliver a large amount in bonds and stock to Beall with an option for thirty days to secure good contracts for the completion of the

railroad, and that, if these were not secured, Beall should return the bonds and stock to Hanfield; and the plaintiff assented, and that all the bonds and stock called for by the first contract were to be and were delivered to Hanfield by the plaintiff, acting through its president. Beall did not perform. This contract, except as to payment in full instead of in installments, perhaps wasted thirty days of time, but did not otherwise release Hanfield from performance.

The learned trial judge, although the issue was not raised in the pleadings, found that this agreement was in violation of the statutory provisions relating to such corporations, because the defendant had not, when he received the bonds and stock, performed any work, furnished any property, or paid any money, and, therefore, such payment and delivery were not made for actual money or property.

The statute relied upon is section 42 of the Stock Corporation Law (Chap. 564, Laws of 1890, as amended by chap. 688, Laws of 1892), as follows:

"No corporation shall issue either stock or bonds except for money, labor done, or property actually received for the use and lawful purposes of such corporation. No such stock shall be issued for less than its par value. No such bonds shall be issued for less than the fair market value thereof."

The object of the plaintiff in issuing bonds and stock was to enable it therewith to build its railroad. They were its currency for that purpose. It could lawfully make a contract with a responsible contracter to furnish the material, and do the work, and pay therefor in so far as it acted in good faith with no inflation of prices as a cover to float paid-up stock for less than its par value and its bonds at less than their market value. If it chose to pay in advance it could do so. The contract to build was the consideration for the contract to pay, and presumably was full consideration.

The plaintiff, for aught shown to the contrary, thus put itself in a position to get par value for the stock and market value for the bonds it delivered to the defendant. The right of the plaintiff to do this, as was said in *Van Cott* v. *Van Brunt* (82 N. Y. 535), "cannot be seriously questioned." To the same effect are *Barr* v. *N. Y., L. E. & W. R. R. Co.* (125 N. Y. 263); *Oregon Pacific R.*

*R. Co.* v. *Forrest* (128 id. 83); *Coe* v. *East & West R. R. Co.* (52 Fed. Rep. 531); *Memphis, etc., R. R. Co.* v. *Dow* (120 U. S. 287); *Fogg* v. *Blair* (139 id. 118).

The plaintiff cites *Douglass* v. *Ireland* (73 N. Y. 100); *Boynton* v. *Hatch* (47 id. 225) and *Barnes* v. *Brown* (80 id. 534). The first two were cases in which capital stock was issued for property the assumed valuation of which was affirmatively impeached, and in the third case the attempt was unsuccessfully made to impeach it. To bring this case within the condemnation of the statute the burden rested upon the plaintiff — if it was competent for it to prove its own wrong and profit by it, as to which see *Whitney Arms Co.* v. *Barlow* (62 N. Y. 62); *Kent* v. *Quicksilver Mining Co.* (78 id. 159) and *Bath Gas Light Co.* v. *Claffy* (151 id. 24) — to prove that the par value of the stock and the market value of the bonds issued to the defendant were worth more than his contract obligation to build the railroad. (*Schenk* v. *Andrews*, 57 N. Y. 133; *Boynton* v. *Andrews*, 63 id. 93; *Lake Superior Iron Co.* v. *Drexel*, 90 id. 87; *Gamble* v. *Queens County Water Co.*, 123 id. 91.) This it has not done; and since its own default in furnishing the right of way left the defendant without legal right to enter upon it, it has failed to put the defendant in default for non-performance. Moreover, it brought this action before his time of performance had expired.

The plaintiff urges that, by the contracts, it was without means to perform. It ought to have received something for its $25,000 of stock issued to other parties, and if it has a valuable franchise it ought to have had credit enough among its own promoters to procure the right of way.

The plaintiff's situation seems to afford small hope of a useful career, but it probably can seek repose from further activity and give place to a less crippled successor.

The judgment should be reversed, and a new trial granted, with costs to abide the event.                                        •

All concurred, except MERWIN, J., dissenting.

Judgment reversed, new trial granted, costs to abide the event.