Gunter, J.
Our statutes make the stockholder liable for the debts of the corporation in the amount unpaid upon his stock. — Mills’ Ann. Stats., vol. 1, secs. 486, 497.
*415 This action was against the corporation and certain stockholders to- enforce such liability. Proof that the stock was not full paid was essential to its maintenance.
About June 21, 1897, the owners of certain patented lode claims gave bonds and leases thereon, and thereby for a valuable consideration agreed to make and place in escrow a deed therefor; this to be surrendered to the grantees therein on their erecting, by August 21, 1897, a concentrating mill upon the property, of the value of five thousand dollars, the same to remain upon and belong thereto, and on their paying as the purchase price thereof fifty thousand dollars in five equal installments, the first on or before June 21, 1898, and the last on or before June 21, 1900. The parties of the second part were to take immediate possession of the claims and to oper-. ate and develop the same. A failure to comply with any one of the conditions of the bonds and leases was to work a forfeiture thereof. July 29, 1897, the parties of the second part agreed with The Silver Ledge Mining and Milling Company, a corporation organized under the laws of this state, and capitalized at fifty thousand dollars, to assign to it the above bonds and leases in full payment of its capital stock, the parties of the second part further agreeing to return to the company twenty thousand dollars thereof, as treasury stock, and to transfer to such stockholders as should furnish the money for erecting the mill twenty-four thousand dollars of the remaining thirty thousand of the capital stock.
There is no evidence of the improvements upon the property, or of the state of its development at the time the bonds and leases were taken, June 21, 1897. There is no evidence of what improvements were placed upon the property, or of what examina *416 tions, if any, were made of the probable resources thereof between the date of the bonds and leases and the assignment thereof to the company for its capital stock. For aught that appears after the taking of the bonds and leases an examination was made of the property, and therefrom its directors and stockholders had reason to believe, and did believe, that the bonds and leases were equivalent in value to the par value of the capital stock. There is no evidence that the directors and stockholders of the company knowingly or fraudulently overvalued the bonds and leases in accepting them for'the company’s capital stock.
January 24, 1898, the corporation increased its capital stock to one hundred thousand dollars, permitting those holding the first issue thereof to surrender the same and to take new stock of the increased issue in the same amount. What the financial condition of the company was at the time of this increase of its capital stock does not appear; for aught that appears the corporation was then in active operation, was then embarrassed, and increased its capital stock in good' faith, and sold the same at the best price that could be obtained to raise money for the successful continuance of its business. The evidence is entirely consistent with such being the condition of appellant corporation, and such being- the purpose for which the stock was increased, and the same sold below par.
The claim sued on is for'mining machinery and materials sold to appellant corporation between June 5, 1898, and November, 1898. Appellant corporation ceased doing business in November, 1898. All of appellant stockholders were purchasers either of the original stock, or of the increased issue, buying both classes of stock below par. The purchases were with full knowledge of the manner in which the capital stock was paid. August 26, 1897, a certificate was *417 filed by tbe officers of tbe company in the proper public offices showing payment of the capital stock by the purchase of certain interests in the 'mining-property known as “The Silver Ledge Group.”
1. In order to show liability upon the part of those appellants holding stock of the first issue, it was necessary for appellee to establish that the stock so held was not full paid by the transfer of the bonds and leases. It was incumbent upon appellee to allege and to prove nonpayment of the stock.
Our statutes authorize the directors of a mining-corporation to purchase mines and issue stock to the amount of the value thereof in payment therefor, and provide that the stock so issued shall be taken to be full paid. — Mills’ Ann. Stats., vol. 1, secs. 490, 582. There is no conflict between these sections and our constitution which provides:
“No corporation shall issue stock or bonds except for labor done, services performed, or money or property actually received, and all fictitious increase of stock or indebtedness shall be void.” — Constitution, art. XV, sec. 9; 1 Mills’ Ann. Stats., p. 358.
Similar constitutional and statutory provisions have frequently come before the courts, and have been considered by the text writers. Their conclusions are not always in accord. It would serve no useful purpose to review them, some could be reconciled, others could not. We shall follow the rule, supported, as we believe, by the better reason and by the weight of authority, and especially because it has the support of our highest national judicial tribunal. The learning and ability of that court, and the fact that following its decisions tends to uniformity in our jurisprudence, are among the reasons contributing to its authority with us.
In Coit v. Gold Amalgamating Co., 119 U. S. 343, the defendant company was incorporated under *418 tlie laws of Forth Carolina, for the purpose of owning and operating mining property. The plaintiff, the holder of the judgment against the company, finding it insolvent brought suit against it and certain of its stockholders to compel the latter to pay what was claimed to be certain amounts unpaid on the shares of the capital stock of the company held by them. Previously to the charter the corporators had been engaged in mining operations. Upon obtaining the charter the capital stock of the association was paid for the property of the corporators. This property consisted of machinery for crushing ore, the right to use a certain patent and the charter for the purpose of organization. The plaintiff contended that the valuation put upon the property in exchanging it for the capital stock of the company was illegally and fraudulently made to an amount far above its actual value, and that, therefore, the capital stock so issued was not full paid, or paid to any substantial extent, and that the holders thereof were liable to the corporation and its creditors for the unpaid subscription. The-court held in substance that it was necessary in order to fix such liability, to show that the property so transferred was fraudulently and knowingly overvalued. In the course of the opinion it was said:
“If it were proved that actual fraud was committed in the payment of the stock, and that the complainant had given credit to the company from a belief that its stock was fully paid, there would undoubtedly be substantial ground for the relief asked. But where the charter authorizes capital stock to be paid in property, and the shareholders ■honestly and in good faith put in property instead of money in payment of their subscriptions, third parties have no ground of complaint. The case is very different from that in which subscriptions to *419 the stock are payable in cash, and where only a part of the installments has been' paid. In that case there is still a' debt due to the corporation, which, if it become insolvent, may be sequestered in equity by the creditors, as a trust fund liable to the payments of their debts. But where full-paid stock is issued for property received, there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account. ’ ’
“It is now well settled that in order to invalidate an issue of stock which is issued for property taken at an overvaluation, it must be shown not only that there was an overvaluation, but also that such overvaluation was intentional and fraudulent.” — 1 Cook on Corporations (5th ed.), § 35, cited with approval in Kelley v. Fletcher, 94 Tenn. 1; and in Calivada Colonized Company v. Hayes, 119 Fed. 202, 208.
“In order that creditors may hold stockholders liable who have paid for their stock in property, oh the ground that the. property was overvalued, the overvaluation must have been fraudulent, or at least intentional. In some states it must have been fraudulent in fact. If the valuation was made in good faith, and the overvaluation was due to mistake or error of judgment, there is no liability, even to creditors.” — Private Corporations (Clark & Marshall), vol. 2, p. 1257.
In speaking of the payment for shares in a corporation, in Arapahoe C. & L. Co. v. Stevens, 13 Colo. 534, 541, our supreme court says:
“In fact, such payment may usually be made in money or its equivalent, and if in the latter, the transaction cannot be impeached for error of judgment on the part of the officers of the company as to the value of the services or property. Glood faith and the exercise of an honest judgment, meet the require *420 ments of the law.” — Citing approvingly, Mor. Priv. Corp., §§ 426, 429; Schenck v. Andrews, 57 N. Y. 133; Douglas v. Ireland, 73 N. Y. 100; Iron Co. v. Drexel, 90 N. Y. 87; Lorillard v. Clyde, 86 N. Y. 384.
This court said in a recent case, Buck v. Jones, 18 Colo. App. 250:
“In the case of corporations organized under the laws of this state for the development of mining-property the capitalization may he, and usually is, fixed with reference to prospective value, that is to value, which in the judgment of the parties, the property actually has, but which development is necessary to disclose; and if such value is estimated in good faith, we think the stock issued in consideration of a transfer of the property should be regarded as full paid, notwithstanding the parties’ judgment should afterwards prove to he erroneous.”
There was no evidence in this case of the value of the property assigned to the corporation, that is the bonds and leases, in return for its stock. In such case the valuation is presumed to- have been honestly made.
“When stock has been paid for by the conveyance of property to the corporation, or performance of services, and there is no evidence at all as to the value of the property or services, it will he presumed that it was adequate, and even where it appears that there was in fact overvaluation, yet, if the overvaluation was not so gross and palpable as to show that it must have been intentional, it will be presumed that the valuation was honestly made, and the burden will be u-pon the creditor attacking the transaction.”— Private Corporations (Clark & Marshall), vol. 2, p. 1221.
As to the first issue of stock there was no evidence that the property, that is, the bonds and leases, which were assigned in return for the capital stock, *421 and in payment thereof, was knowingly or fraudu.lently overvalued hy such assignment. We think such stock was full paid, and that, therefore, there was no liability of appellant stockholders thereon.
2. As to those appellants holding stock of the increased issue, it is contended that they are liable thereon for the difference between its par value and the price at which they purchased it, they having-bought, as stated, at below par. The. burden was upon appellee to show such stockholders liable upon" this stock. To have done so they must have shown that in purchasing it below par they violated the law. No presumption obtains that they violated the law from the mere fact of the purchase of the stock below par. For aught that appears in the evidence iu this case, this corporation was an active one, a going- concern; it found its original capital impaired; for the purpose of recuperating itself, and providing-conditions for the successful prosecution of its business it increased its stock and sold therefrom at the best price that could be obtained. If the stock was increased, and sold under such conditions, even at below par, no liability attaches to the .stockholders so purchasing.
“Where an active corporation becomes embarrassed and issues an increase of its capital stock in good faith at the best price that can be obtained, although it may be less than the par value, either in payment of debts, or to raise money for the successful continuance of its business; * * *” there is no such liability. — Private Corporations (Clark & Marshall), vol. 2, p. 1258.
“It frequently happens that corporations, -as well as individuals, find it necessary to increase their capital in order to raise money to prosecute their business successfully, and one of the most frequent methods resorted to is that of issuing new shares of *422 stock and putting them upon the market for the best price that can be obtained; and so long as the transaction is bona fide, and not a mere cover for watering the stock, and the consideration obtained represents the actual value of such stock, the courts have shown no disposition to disturb.it.” — Handley v. Stutz, 139 U. S. 417, 430, 435; Dummer v. Smedley, 110 Mich. 466; Stein v. Howard, 65 Cal. 616; Kellerman v. Maier, 116 Cal. 416.
“ It is now established law that an embarrassed corporation may, upon an increase of its stock, put such stock upon the market and sell it-for the best price that can be obtained, and that the corporation may throw in as a bonus a certain amount of full-paid stock to the purchaser of its bonds and there will be no liability on the stock.” — Cook on Corp. (5th ed.), vol. 1, p. 118, § 42.
“Where stock is issued for cash at less than par, the parties taking it are liable to corporate creditors for the unpaid par value thereof, unless the issue was subsequent to the commencement of business and the real value of the stock was paid into the corporation in order to enable it to go on with its business instead of becoming insolvent.” — Cook on Corp. (5th ed.), vol. 1, p. 122, § 45. See, also, Nelson v. Hubbard, 96 Ala. 251; Bruner v. Brown, 139 Ind. 606; Peoria & Springfield R. R. Co. v. Thompson, 103 Ill. 187; Christenson v. Eno, 106 N. Y. 97.
In our opinion appellant stockholders were not liable either upon the first issue of stock or the increased issue; the judgment was, therefore, erroneous as to such stockholders. Other questions of interest have been discussed, which we have not ruled, because their decision is not essential to a determination of this cause.
The judgment should be reversed.

Reversed.