THE LAKE SUPERIOR IRON COMPANY, Appellant. *v.* JOSEPH W. DREXEL, Respondent.

A corporation having been organized under the General Manufacturing Act (Chap. 40, Laws of 1848, as amended by chap. 333, Laws of 1853), with a nominal capital of $2,500,000, divided into shares of $100 each, a proposition was made to its board of trustees to sell to it certain patents and property for $2,500,000, and to receive in payment the whole capital stock, the vendors, however, to deliver nine thousand of the shares to the trustees ; six thousand thereof to be sold for $50 per share, $50,000 of the purchase-price to be paid to the vendors, and the balance to be paid over to the treasurer of the company for its use.    This proposition was accepted, and subscriptions were opened for the six thousand shares. When all of it was subscribed for, the transfer was made and the whole capital stock issued to the vendors in one certificate.    On the same day this was returned and canceled, certificates for the nine thousand shares were issued to the trustees, and the six thousand shares were transferred to the subscribers.    Defendant subscribed and paid for five hundred shares, at $50 per share.    In an action brought by a creditor of the company to enforce the liability for the company's debts, imposed by said act (§ 10) upon the stockholders, until the whole capital stock has been paid in, all of the trustees were called as witnesses, and each testified that he acted in good faith in the transaction and believed the property purchased

---

* This case was decided without an opinion; it appears in the Mem., *post*, p. 637.

to be worth $2,500,000, and other evidence was given tending to show they had good grounds for such belief. *Held*, that the question was properly submitted to the jury, as to whether the purchase and issue of the stock for the property was in good faith, or simply a scheme to evade the statute; and that the evidence justified a verdict for defendant.

(Argued June 29, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 20, 1881, which affirmed a judgment in favor of defendant, entered upon a verdict.

The nature of the action and the material facts are stated in the opinion.

*William G. Wilson* for appellant. Until the capital of the Blair Iron and Steel Company is fully paid in the defendant is liable to the plaintiff. (Laws of 1848, chap. 40, §§ 10, 14, 24; Laws of 1853, chap. 333, § 2.)

*Elial F. Hall* for respondent. It was properly left to the jury to decide whether or not the trustees acted honestly and in good faith, in valuing the patents and iron works purchased by them at the sum of $2,500,000. (*Boynton* v. *Andrews*, 63 N. Y. 95; *Schenck* v. *Andrews*, 57 id. 142, 143; *Brockway* v. *Ireland*, 61 How. Pr. 372; *Seward* v. *Jackson*, 8 Cow. 435; *Jackson* v. *Peck*, 4 Wend. 302; *Jackson* v. *Timmerman*, 7 id. 437.) It was properly left to the jury to decide whether the setting apart and sale of a part of the stock at less than its par value, in order to raise working capital, was an honest transaction or a fraudulent evasion of the statute. (*Smith* v. *Coe*, 55 N. Y. 678; *Brockway* v. *Ireland*, 61 How. Pr. 372; *Douglas* v. *Ireland*, 73 N. Y. 100.) Manufacturing corporations under the acts of 1848 and 1853 are not to be confounded with savings banks. (*Schenck* v. *Andrews*, 57 N. Y. 142, 143, 147; *Boynton* v. *Andrews*, 63 id. 95.)

EARL, J. This is an action against the defendant as a stockholder of the Blair Iron and Steel Company to recover the

amount of a debt due from that company to the plaintiff, on the ground that the company was not so organized as to protect its stockholders from individual liability. The company was organized January 6, 1873, under the General Manufacturing Act (Chap. 40 of the Laws of 1848), with a nominal capital of $2,500,-000, divided into twenty-five thousand shares of $100 each. The certificate of incorporation was signed by Blair, Struthers, Hall, Smith and Miller, who were also designated as trustees to manage the affairs of the company for the first year. The objects of the corporation, as stated in the certificate, were " the manufacturing of iron and steel and of such articles as may be used in such manufacture ; also the mining and transporting of such minerals as may be used in such manufacture." The five trustees met in New York city on the 20th day of January and elected Blair president and Smith secretary and treasurer of the company. At that meeting Struthers, one of the trustees, in behalf of the firm of Blair, Foster & Struthers, of which firm he was a member, submitted a written proposition to the company to sell, to it certain patents for the manufacture of iron and steel and certain works at Pittsburgh, Pennsylvania, for the price of $2,500,000, and to receive in payment therefor the whole capital stock of the company. The proposition also contained this provision : " Of the twenty-five thousand shares of stock, however, so delivered to us in payment for said patents and property, we agree to place six thousand shares in the hands of Gen. A. S. Diven, as mutual trustee for us, the Blair Iron and Steel Company, and the persons who may become purchasers of said six thousand shares ; it being understood that said shares may be sold for $50 per share, one-third thereof to be paid down when the whole of said six thousand shares shall be subscribed for and taken, half of which first payment shall be paid over by said trustee to us when received by him, and the other half to the treasurer for the use of the company, and the whole amount of the remaining two-thirds thereof shall be paid over by him, when received, to the treasurer, for the use of said company. And we agree further to transfer to said A. S. Diven, as trustee,

three thousand of the said twenty-five thousand shares, for the future use and benefit of said company, and the whole of the proceeds thereof when sold to be paid and accounted for by him to said company; the trustees to direct the sale of said three thousand shares at such time and on such terms as they may think best for the interest of the company." This proposition was, by a resolution of the trustees, accepted, and a direction was made that the stock be issued to Blair, Foster & Struthers, the certificates thereof to be signed by the president and secretary. On the same day a subscription paper was prepared, to be signed by persons who wished to subscribe for the six thousand shares at fifty per cent of their par value. That paper recited that the whole capital stock of the company had been paid up by the transfer of the patents and the works, and all issued to Blair, Foster & Struthers, who agreed to place in the hands of Diven, as trustee, nine thousand shares, to be used as working capital for the company, excepting $50,000 of the proceeds thereof, which was first to be paid to them, and that the trustees of the company had ordered the sale of six thousand shares at $50 per share. The defendant subscribed this paper for five hundred shares at $50 per share, and all the six thousand shares were subscribed for by the 12th day of April, 1873, when a formal transfer of the patents and works was made to the company. On that day a certificate of stock for twenty-five thousand shares numbered "Zero" was issued to Blair, Foster & Struthers, and on the same day it was returned and canceled and a certificate numbered "1" for six thousand shares and another numbered "2" for three thousand shares were issued to Diven as trustee, and a certificate for the remaining sixteen thousand shares was issued to Blair, Foster and Struthers.

The proceeds of the six thousand shares subscribed for at $50 per share, were paid to the treasurer of the company, and out of the same $50,000 were paid to Blair, Foster & Struthers, according to the terms of their proposition as above set out.

Section 10 of the act of 1848 provides that all the stock-

holders of every company incorporated. under that act "shall be severally individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them, respectively, for all debts and contracts made by such company until the whole amount of capital stock fixed and limited by such company shall have been paid in;" and section 14 provides that "nothing but money shall be considered as payment of any part of the capital stock." In 1853, by the act chapter 333 of that year, the act of 1848 was amended, by providing that the trustees of any company formed under that act "may purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor; and the stock so issued shall be declared and taken to be full stock and not liable to any further calls; neither shall the holders thereof be liable for any further payments under the provisions of the tenth section of the said act." The claim of the plaintiff is that the whole amount of the capital stock was not paid in, and hence that the defendant is liable to it under section 10 above set out; and it contends that it conclusively appears that Blair, Foster & Struthers actually received only sixteen thousand shares of the stock and $50,000 in cash for the property which they transferred to the company.

All the trustees who took from Blair, Foster & Struthers the transfer of the property and caused the stock to be issued to them, were called as witnesses upon the trial, and each testified that he acted in good faith in the transactions and believed the property received was worth the sum of $2,500,000, and the defendant also gave evidence tending to show that the trustees had good grounds for believing that the property was worth the sum named, and that the stock was issued therefor in good faith.

At the close of the evidence on both sides, plaintiff's counsel moved the court to direct a verdict for the plaintiff upon the ground that "the capital stock of the defendant's corporation being fixed at twenty-five thousand shares, and sixteen thousand shares having been issued in payment for

property, and six thousand shares being issued to cash subscribers at fifty per cent of their par, the capital has never been fully paid as required by law." Defendant's counsel moved the court to direct a verdict for the defendant, and to hold that there was nothing in the case which would justify the jury, if the question were submitted to them, in finding that the sale of the property was made in bad faith, or with the intention to evade the requirements of the statute. The court denied both motions and held that the case should be submitted to the jury for them to determine whether the receiving the property and issuing the stock therefor was an honest transaction, consummated in good faith, or whether it was a scheme devised to evade the statute. In charging the jury the court said: " The real question, therefore, is whether the property was placed and taken at a higher valuation with a fraudulent purpose, with the intent of evading the provisions of the statute."

We are of opinion that the court committed no error in the submission of the case to the jury. In *Douglass* v. *Ireland* (73 N. Y. 100), it was laid down as the law in this State that to charge a holder of stock, issued upon and for the purchase of property, individually for the debts of the company, it is not enough to prove that the property was purchased and paid for at an over valuation through a mistake or error of judgment on the part of the trustees, but that it must be shown that the purchase at the price agreed upon was in bad faith and to evade the statute ; and that all that is necessary to establish the legal fraud and take the stock issued out of the immunity assured to stock honestly issued in pursuance of the act of 1853 is to prove two facts: (1) That the stock issued exceeded in amount the value of the property in exchange for which it was issued; and (2) That the trustees deliberately and with knowledge of the real value of the property over-valued it, and paid in stock for it an amount which they knew was in excess of its actual value. In that case the whole capital stock of the company, three thousand shares, was issued for property to one Horton, and he, in pursuance of an agreement with the company, on or

about the same date, transferred back to the company six hundred shares, to be sold to pay the contract price which Horton had agreed to pay for some of the very property transferred to the company for its stock, and also one thousand shares for the purpose of enabling the company to raise a working capital by the sale of the same. The question of the value of the property received for the stock was submitted to a jury and they found it to be $65,000, and the other questions in the case were decided by the court and it found that the value of the property was so disproportionate to the nominal value of the stock as to take the case out of a sound discretion exercised by the trustees; that the transaction was a fraud upon the law and could not be upheld as a mistake or innocent misunderstanding of the value of the property; that the capital had not been paid in as required by the statute, and that the defendant was therefore liable. The decision of the trial term in that case was upheld, not upon the theory that as matter of law upon the facts proved the capital stock had not been paid in, but upon the findings of fact that it had not been paid in; and whether it was paid in or not was treated as a question of fact which was found against the defendant. Afterward another action was commenced against the same defendant by another plaintiff, and upon substantially the same evidence the jury rendered a verdict in favor of the defendant, and the judgment entered thereon was affirmed at the General Term, upon the ground that the trial judge had substantially followed the case of *Douglass* v. *Ireland* in submitting the case to the jury. (*Brockway* v. *Ireland*, 61 How. Pr. 372.)

In this case the evidence was very persuasive, that the trustees, in exchanging the stock of the company for the property taken, were endeavoring to evade and circumvent the law, but it was not conclusive. Another view of the evidence was possible, and that is, that the parties believed the property to be worth $2,500,000, for the uses and purposes of the corporation, and that the trustees actually gave the entire stock for it. The title to the stock passed out of the company, and Blair, Foster & Struthers could then do with the stock what they pleased,

sell it, give it away, or retransfer a portion of it to the company, in order that the business of the company might be successfully prosecuted, and thus the sixteen thousand shares of stock still held by them rendered more valuable.

When they transferred the nine thousand shares they made a transfer of actual stock which had been paid for, which belonged to them, and which, but for their agreement with the company, they could hold against it. The fact that they were under obligation to devote a portion of the stock received by them to the purposes of creating, through a trustee, a working capital for the company, by which they were to be benefited more than all others, no more altered the real nature of the transaction than if they had agreed to contribute a large sum of money toward the working capital instead of stock. It could not be said, as matter of law, that the property transferred for the stock was not worth the nominal value of the stock, or that the trustees did not believe, and have reasons to believe, that it was, and it could not be said that they did not issue the whole amount of the stock in payment for the property, because they did, in form, so issue it. Whether the form the transaction took was a mere sham, intended as an evasion of the statute, was a question of fact for the determination of the jury.

It may be said that the statute may thus easily be circumvented and evaded; but the policy of the law will be preserved and enforced if all the questions of fact in such cases be left to the jury under principles laid down in the cases cited.

If right in the views thus far expressed, no error was committed by the trial judge in his charge to the jury and in his refusals to charge as requested by plaintiff's counsel.

The exceptions taken during the progress of the trial to rulings upon questions of evidence have been carefully examined and considered, and it is not believed that any of them point out any error which calls for a reversal of the judgment.

The judgment should be affirmed, with costs.

All concur, except TRACY, J., who does not vote.

Judgment affirmed.