ELI W. BLAKE, Respondent, v. CHESTER GRISWOLD, Impleaded, etc., Appellant.

Defendant G., as trustee of a manufacturing corporation, joined in making an annual report, which stated that the capital stock of the corporation ($2,000,000) had been paid up in full. In an action by a creditor of the corporation, under the Manufacturing Act (§ 15, chap. 40, Laws of 1848), to recover of the trustees signing the report, the amount of his claim, on the ground that such statement was false, to the knowledge of the sign-ers, it appeared that the stock of the corporation was issued to one R. in payment for certain iron mining property, then undeveloped. The prop-erty had been purchased by R. of another corporation in which G. was a stockholder. G. received from R. $10,000 of the stock of the new com-pany, given to him without consideration to enable him to act as trustee. R. surrendered to the new company one thousand shares of the stock, which was pledged, with $70,000 of the corporate bonds to secure a loan of $35,000, and gave five hundred shares as a commission to the officer who negotiated the loan. The property was proved to be worth not over $60,000. It was sold to R. for $1,000,000 of stock and $200,000 of bonds of the new company, and in his deed to that company the consideration expressed was $600,000. Of all of which facts it appeared G. had knowl-edge. Held, the facts justified a finding that G. signed the report in bad faith, knowing it to be false.

L. S. I. Co. v. Drexel (90 N. Y. 87), distinguished.

Upon the trial the stock-ledgers, the books of certificates of stock, and the books of minutes of the two corporations were offered and received in evidence. Held no error.

Corporate books are not only evidence of corporate acts when they are to be proved, but are, to some extent, evidence against stockholders, who are chargeable with knowledge of their contents.

One B. was called as a witness for plaintiff to prove the value of the prop-erty. He was a trustee of the new company, and his testimony showed that he had had large experience in the development of iron mines, the transportation of the ore, and the difficulty and uncertainty of determin-ing its extent and quality. He had examined the property so far as was at the time possible. When asked as to the value, he stated that this was

speculative. *Held*, that this simply meant that as a mining property and for mining purposes, while its value was uncertain it had a value beyond that belonging to it as land and for agricultural purposes; that the witness was competent to give, and it was not error to receive, his opinion as to such value.

Another witness had been a manufacturer of iron; had bought and sold ore for many years; had owned and sold mineral lands; he knew the land in question, and owned land in its vicinity. *Held*, he was competent to testify as to its value.

(Argued October 16, 1886; decided November 23, 1886.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made January 19, 1886, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff as a creditor of the Iron Mountains Company of Lake Champlain, a corporation organized under the General Manufacturing Act, against defendants as trustees of said corporation, to recover the amount of plaintiff's claim, because of an alleged false statement in an annual report signed by defendants as such trustees, they knowing the same to be false. Defendant Griswold appeared and answered.

The statement alleged to be false was as follows: " That the capital stock of said company is two millions of dollars; that said capital stock has been paid up in full."

The court found that said statement was false "in that no part of the capital stock of the company was paid in cash, and in that said capital stock had not been paid up in full, nor had any part of said capital stock been paid otherwise than in mining property conveyed to said company for $1,000,000 of its stock and $200,000 of its bonds, and that nothing had been paid in any manner for any other portion of its stock, and in that the said mining property so conveyed to said company in payment for said portion of its stock was not worth, at that time, more than the sum of $60,000, and the said report as to all the matters hereinbefore stated was known to the said defendant, Chester Griswold, to be so false at the time it was made."

*Wm. C. Holbrook* and *M. D. Grover* for appellant. As fraud can never be presumed where good faith may as well and properly be implied, an inference should not be drawn. (*L. Sup. Iron Co.* v. *Drexel*, 90 N. Y. 87.) The question in this case is not what was the market value of this property, or what an individual would give for it for any purpose, but what the property might be fairly estimated at for the uses and purposes of the corporation. (*Boynton* v. *Andrews*, 63 N. Y. 94; *Schenck* v. *Andrews*, 57 id. 133, 147.) The question is not so much what the property was worth, as it is as to what defendant believed it to be worth from such means of knowledge as he possessed, and such means were the statements and opinions of others, upon which he had a right to rely. (*Brockway* v. *Ireland*, 61 How. Pr. 372; *L. Sup. Iron Co.* v. *Drexel*, 90 N. Y. 87; *Draper* v. *Beadle*, 16 Weekly Dig. 475; *Shrewsbury* v. *Blount*, 2 Scott [N. C.], 588.) It was competent to examine defendant as to his opinions and belief touching the matters set forth in the answer, and as to his knowledge of the value of the property. (*Borz* v. *Ridder*, 12 Daly, 329; *Meacham* v. *Burke*, 54 N. Y. 217; *Andrews* v. *Raymond*, 58 id. 217.) To hold the defendant liable some evidence is required of bad faith, something indicating a consciousness of falsehood instead of a belief of truth, and that the penalty follows an actual and not a constructive falsehood; one known and understood to be such, and not possibly believed to be otherwise. (89 N. Y. 122–5–6.) The book of minutes of the Iron Mountains Company, and the entries admitted in evidence therefrom, were incompetent as against the defendant in these penal actions, and should have been excluded. (*Chaffee & Co.* v. *U. S.*, 18 Wall. 516–38–40; *Ocean Bk.* v. *Carll*, 55 N. Y. 440; *Hager* v. *Cleveland*, 36 Md. 476; *Maxwell's Exrs.* v. *Wilkinson*, 113 U. S. 656.) Nothing can be presumed against defendants, but every act necessary to establish liability must be affirmatively proven. (*Bruce* v. *Platt*, 80 N. Y. 381; *Cameron* v. *Seaman*, 69 id. 396; *Osborne, etc., Co.* v. *Croome*, 14 Hun, 164; affirmed, 77 N. Y. 629.) There was no active duty on the part of defendant to inquire as to transactions and

proceedings of the company prior to his accepting the office of trustee. (*Wakeman* v. *Dalley,* 51 N. Y. 27–31; *Arthur* v. *Griswold,* 55 id. 400–6; *Booth* v. *Robinson,* 55 Md. 419; *Moore* v. *Burke,* 4 F. & F. 258; *Weir* v. *Barnett,* Eng. L. R., Exch. Div. 32; affirmed, id. 238; *Cargill* v. *Bower,* Eng. L. R., 10 Ch. Div. 502; Whart. on Ev.; *Mudgett* v. *Howell,* 33 Cal. 25; *Hager* v. *Cleveland,* 36 Md. 476; *Chaffee & Co.* v. *U. S.,* 18 Wall. 516–38–40; *Ocean Bk.* v. *Carll,* 55 N. Y. 440; *Halsey* v. *Sinsebaugh,* 15 id. 485; *Bussell* v. *H. R. R. Co.,* 17 id. 134; *Jackson, ex dem. Donnally,* v. *Walsh,* 3 Johns. 226; *Billings, Recr.,* v. *Trask,* 30 Hun, 314–18; *Phila. Bk.* v. *Officer,* 12 S. & R. 49–52; *Ridgway* v. *Farmers' Bk.,* id. 256.) Even if a distinction is to be made between books of minutes and the stock-book, required by law to be kept, the entries from the "stock-ledger," and book entitled "certificate of stocks," were nevertheless improperly received. (3 N. Y. Stat. at L. [Edm. ed.] 738; *Mudgett* v. *Howell,* 33 Cal. 29.) It was error to admit the deed from the Kingdom Company to Remington, as well as that from the latter to the Iron Mountains Company, defendant not being a party to either. (Whart. on Ev., § 1042; *Rose* v. *City of Taunton,* 119 Mass. 99; *Hardenburgh* v. *Larkin,* 47 N. Y. 109.) The evidence as a whole, when taken in connection with defendant's uncontradicted and positive testimony that he acted in good faith, will not support a finding that he acted in "bad faith willingly, or for some fraudulent purpose," which it is essential should be first found before he can be made liable for signing the report "knowing it to be false." (*Pier* v. *Hanmore,* 86 N. Y. 103; *Bonnell* v. *Griswold,* 89 id. 125–6; *Stebbins* v. *Edmonds,* 12 Gray, 2203; *Cliquot's Champagne,* 3 Wall. 114; *Verona Central Cheese Co.* v. *Murtaugh,* 50 N. Y. 314; *Earl Beauchamp* v. *Winn,* L. R., Eng. & Ir. App., 6 H. of L. Cas. 223–34.)

*Richard Hand, E. T. Brackett* and *A. Pond* for respondent. The books and records of a corporation are always competent evidence against its stockholders and officers, and

they are chargeable with the knowledge of their contents. (1 Greenl. Ev., § 493; *Humphrey* v. *People*, 18 Hun, 393, 394; *Pier* v. *George*, 20 id. 210, 211; *Albany City Bk.* v. *Albany*, 92 N. Y. 363, 367; *Holbrooke* v. *Jackson*, 7 Cush. 136, 142, 146; *Bonnell* v. *Griswold*, 89 N. Y. 122.) Nor was it error to admit the records of the Kingdom Ore Company. It was proper to admit the certificate of incorporation of that company and the resolution to sell its lands for the stock of this company, as a part of the *res gestæ*, it being a direct violation of the statute for it to sell its property for stock in this corporation. (Laws of 1848, p. 56, § 8.) It was competent to prove the allegations of the complaint, that the conveyance was fraudulent, because it showed that the officers of the Kingdom Company acted as sellers of the property for the Kingdom Company, and buyers of it for the Iron Mountains Company. The transaction was, therefore, void and no valid agreement was ever made either to sell the lands or purchase the stock in question. (*Abbott* v. *Am. H. R. Co.*, 23 Barb. 578; *Waters* v. *Quimby*, 27 N. J. L. 198; *Parker* v. *Nickerson*, 112 Mass. 195; *Osgood* v. *King*, 42 Iowa, 478; *Fort* v. *Russell*, 36 Ind. 60; *Wetherbee* v. *Baker*, 35 N. J. Eq. 501, 514.)

FINCH, J. A recovery was had in this case against the defendant under section 10 of the Manufacturing Act, upon the ground that, in making the annual report required by that act, he had asserted a falsehood. The plaintiff sought to establish that the statement in the report that the whole capital of $2,000,000 had been paid in was not only untrue, but that the defendant knew it to be untrue when he signed the report, and so was guilty of actual falsehood. The defense pleaded was that the whole capital stock of the Iron Mountains Company had been issued to Remington in payment for a mining property bought by him of the Kingdom Ore Company. Since that purchase was claimed by the plaintiff to have been made for a far less amount and to have been of very much less value, the issue raised involved necessarily the corporate acts of the

two companies, of which their records were the natural and proper evidence.

The defendant was shown to have been a trustee or director in both companies. In the original certificate of the Iron Mountains Company he is named as one of the trustees. That he accepted the office is fairly to be inferred from his own statement of the reason for the appointment, from the fact that he received from Remington $10,000 of the stock to enable him to act, and that at the meeting in December he was present and serving as one of the trustees. His only denial in the answer is of the allegation that he remained a trustee after August, 1870, and his sworn assertion, in the report of January, 1870, that he was such trustee justifies the inference to which we have referred. He was not named as a trustee in the certificate of the Kingdom Ore Company, but, while at first denying his official connection with that corporation, he afterward, as he says, " on reflection," admitted that he was a stockholder in it. It is not necessary to resort to or rely upon the similar admission in the answer the proper effect of which was somewhat discussed.

It seems to be the rule that the corporate books are not only evidence of the corporate acts when those need to be proved, but are to some extent evidence against the stockholders who are chargeable with a knowledge of their contents. The books to which objections were taken on behalf of the defendant were the book of certificates, the stock-ledger, and the minutes of the two companies. The stock-ledger contained the names of the stockholders, the number of shares held by each, and a record of the transfers made. While not in all respects accurately complying with the requirements of the statute, it did so substantially, and is made by the law presumptive evidence of the facts recorded. The objection of the defendant was aimed principally at the book of minutes of the Iron Mountains Company. The material contents of that were the proceedings of the initial meeting of the trustees at which the purchase of Remington was determined and the full capital stock issued to him, and the action of the meeting held

December 15, 1869, at which the defendant was present. Nothing else in the minutes appears to be material. These records were admitted by the court as showing the corporate action, and without deciding that the defendant was to be charged with actual knowledge of what transpired in his absence. To this extent at least they were admissible, and the ruling was correct.

Two facts were to be established by the plaintiff: First, that $2,000,000 was not in truth paid for the mining lands; and Second, that the defendant had actual and not merely constructive knowledge of the fact. The records furnish some evidence bearing upon the first issue, and their correctness, so far as they described the action taken at the organization of the company, was explicitly proved by Burleigh, who was present and participated in the meeting; while as to the proceedings in December the defendant admits his presence and in no manner denies the correctness of the record.

There remained, therefore, in the case the question of fact whether the defendant had actual knowledge that the $2,000,000 issued to Remington was a sham price, founded upon a large false estimate of the lands. The defendant had seen the property; he had been over it with his father and others; he knew that it was undeveloped, and that the character and extent of its ores was an unsolved problem; he knew that the whole capital stock was issued to Remington as vendor of the lands; he knew that with unexplained liberality Remington had given him, without consideration, $10,000 of the stock; he must have known also that the same vendor had given back to the Iron Mountains Company a large quantity of the stock since we find him seconding his father's resolution to pledge one thousand shares with seventy bonds for a loan to the company, and to give five hundred shares to the officer who negotiated the loan as a commission, and from no other source than the free gift of Remington was it possible for him rationally to trace that ownership of the company. It is not quite easy to believe that he could have advised giving a mortgage on the property and $70,000 of the corporate bonds, and $100,000 of

the stock for a loan of $35,000, if he was honestly convinced that the stock at par represented real dollars and full value. At all events what he did know tended to establish the second issue, that he was guilty of actual falsehood when in the report he signed he declared that the full capital stock had been paid in. There was, therefore, a substantial basis in the evidence for the finding of the trial court, and we are bound to accept it as correct. In this respect the case differs from *Lake Superior Iron Co.* v. *Drexel* (90 N. Y. 87). There, upon facts somewhat similar, the verdict of the jury established good faith and honest judgment. Here the finding of fact is exactly the reverse.

The plaintiff's proof as to the comparatively small value of the mining property was very material, and was the subject of further objection on the part of appellant. One of the witnesses was Burleigh. He was a trustee of the Iron Mountains Company. He testifies to a large and valuable experience in the development of iron mines, in the transportation of the ore, and in the difficulties and uncertainties of determining its extent and quality. Doubtless that experience and knowledge led to his selection for the office he held. At all events he was competent to testify as to the value of the property, having examined it so far as was at the time possible. When asked as to that value, he expressed the difficulty of a just answer by saying that such value was speculative, by which he plainly meant that as a mining property and for mining purposes its value in the result was uncertain. But it had a value nevertheless, and beyond that belonging to it as land and for agricultural purposes, but affected by the uncertainty both as to the quality and extent of the veins. In the end he valued the furnace at $10,000, and the mining property at $50,000 or $60,000. That estimate he expressed by saying: "I might on speculation have paid" that amount for it. This answer the defendant moved to strike out, but the request was refused, the court saying it understood him to mean that the property was not worth more than that amount. Such undoubtedly was his meaning, and he made no objection to the construction put

upon it.   It is said that he examined only a part of the property.   That is true, but he examined it where the work was going on, and the ore was being taken out, and seems to have had all the opportunity that was really useful.

Another witness was Merrian.  He had been a manufacturer of iron, and bought and sold ores for a period of twenty-seven years. He had owned mineral lands and sold them, but reserving the mines.  He knew the property of the Kingdom Ore Company, and had owned land for a long time in its vicinity.   He said that the lands in question in August, 1869, when there was a good deal of speculation going on, and " with the attraction he had seen, might have been sold for $40,000 or $50,000." On cross-examination he explains that he had been over a part of the lands with a mining compass with a view to discovering minerals, and found the same vein of ore cropping out that was on his own land.   Of course, he answers that the value was speculative from the necessity of the situation.   We do not think there was error in receiving the testimony of these witnesses.   Its force was, perhaps, intensified by the fact that the mining engineers called for the defense, while speaking quite favorably of the property, do not venture to put a value upon it, and by the circumstance that the Kingdom Ore Company sold it to Remington on the 12th of August, 1869, for ten thousand shares of stock and $200,000 of bonds of the Iron Mountains Company, and that Remington in his deed to the latter company expressed the consideration at $600,000.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.