THE NATIONAL TUBE WORKS COMPANY, RESPONDENT,
v. WILLIAM J. GILFILLAN, APPELLANT.

*Issue of stock for the purchase of property to be used by a corporation — 2 R. S. (6th ed.), 504, 505, secs. 38–40 — knowledge by the stockholder of an alleged overvaluation of the property must be proved.*

This action was brought by the plaintiff, a judgment creditor of the Brooklyn Marine Power Company, against the defendant, who was a stockholder in, and trustee and president of, the said company, to recover the amount of the indebtedness from the defendant personally, on the ground that the capital stock fixed and limited by the company had not been paid in.   Upon the trial it appeared that the company was organized with a capital stock of $300,000 in shares of $500 each; that these shares were all issued for certain inventions of one A. Perry Bliven, relating to marine steam generators and other articles adapted to marine purposes, for none of which Bliven had then received, nor did he or the company thereafter receive. a patent, although it was agreed by him that he would make and prepare all the necessary plans, drawings and specifications, and make every reasonable effort to procure patents in the United States and other countries.

A certificate for the entire 300 shares of the stock was, on the day it was issued by the defendant, as president, canceled and new certificates were issued, pursuant to an agreement made between the defendant and Bliven, one for 200 shares to the defendant and another person, as co-trustees for the company; one for 100 shares to the defendant in payment of an indebtedness, owing to him from Bliven, in the sum of $15,000.   It also appeared that twenty-seven shares were. given to other persons to enable them to become interested in, or act as trustees of, the company.   Upon the trial the jury found that the inventions, for which the shares were issued, were not worth more than $75,000.

*Held,* that the jury were justified in finding not only that the inventions were worth less than the prices agreed to be paid for them but that it was so understood by the defendant and the other parties to the transactions.

That as no patent was at any time issued for any of the inventions, and the company acquired no exclusive right to use, employ or vend them, the right to the inventions scarcely rose to the dignity of property.

That evidence showing that the defendant had been connected with two preceding corporations, having something to do with the use of these inventions, was properly admitted as the jury might infer that he had thereby acquired such a knowledge of the inventions as to impress him with the conviction that they were not worth the prices that the company agreed to pay for them.

. APPEAL from a judgment entered on the verdict of a jury and from an order denying a motion made for a new trial.

*Charles H. Luscomb*, for the appellant.

*Sullivan & Cromwell*, for the respondent.

DANIELS, J. :

The plaintiff recovered two judgments against the Brooklyn Marine Power Company for goods sold and delivered to the company. Executions were issued upon the judgments and were returned wholly unsatisfied. It then brought this action against the defendant, who was a stockholder in and trustee and president of the power company, to recover the amount of the indetedness against him personally on the ground that the capital stock fixed and limited by the company had not been paid in. In support of the action it was made to appear that the company was organized with a capital stock of $300,000, in shares of $500 each. And these shares were all issued for certain inventions of A. Perry Bliven, intended to be used in the business of the company. The first and principal of these inventions was a stationary marine steam generator, high pressure water tube and coil boiler, with spiral coils. The second was for a four cylinder balance direct acting high pressure stationery and marine engine ; the third for a propelling screw for steamships, etc., the fourth for an improved metal joint for steam and water pipes, and the fifth for an improved keel condenser for marine purposes for the better condensation of steam on steamships, etc. Neither of these inventions was patented to Bliven or to the company, but it was agreed by him that he would make and prepare all the necessary plans, drawings and specifications for patents for them in the United States and other countries, and make every reasonable effort to procure patents on such inventions.

On the trial of the action evidence was given by witnesses sworn on behalf of the plaintiff, more particularly tending to discredit the invention for the steam generator or boiler, and a boiler constructed according to the plan of the invention was stated to be of no value. This evidence was controverted by proof on behalf of the defendant which left that issue a fair matter of fact to be decided by the jury. And they determined it so far in favor of the plaintiff as to find the inventions to be worth no more than the sum of $75,000.

This, however, did not determine the right of the plaintiff to maintain the action against the defendant, for under the authorities, it was necessary for the plaintiff to establish the further fact to complete the right of action, that the defendant understood the inventions to be of less value than the $300,000 of stock, which were to be delivered to the inventor for the inventions and the right to use them.

The statute has declared all the stockholders of every company incorporated under the law providing for the incorporation of manufacturing companies, to be severally individually liable to the creditors of the company to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company until the whole amount of the capital stock shall have been paid in, and a certificate thereof made and filed. And it has permitted the trustees of the company to purchase machines, manufactories and other property necessary to their business and to issue stock to the amount of the value thereof in payment therefor, which shall be declared and taken to be full stock not liable to any further calls. (2 R. S. [6th ed.] 504, 505, § 38–40.) But as the courts have construed these provisions, the creditor to entitle himself, or itself, to recover against a stockholder for the indebtedness of the company, must make it appear that an overvaluation was allowed for the property, with the knowledge of the party proceeded against. In other words that the company with his concurrence shall have acted in bad faith in issuing the amount of stock delivered for the property purchased. (*Douglass* v. *Ireland*, 73 N. Y., 100; *Thurston* v. *Duffy*, 38 Hun, 327; *Lake Sup. Iron Co.* v. *Drexel*, 90 N. Y., 87; *Blake* v. *Griswold*, 103 N. Y., 429.) To establish this latter fact evidence was given to prove that 200 shares of the stock of the company was returned to, or held for it, for its own benefit

and advantage, and 100 shares was delivered to William J. Gilfillan, the defendant in the action in payment of an indebtedness owing to him from Bliven, for the sum of $15,000 and twenty-seven shares seem to have been donated to other individuals, to enable them to become interested in, or trustee of, the company.

These are in addition to the ten shares transferred to Andrew J. Dexter in payment of an indebtedness owing to him. A certificate for the entire 300 shares was issued and subscribed by the defendant as president on the 16th of February, 1885. This was canceled on the same day by him and a certificate issued for 200 shares to the defendant, and W. C. Bolton, co-trustees of the company. On the same day a further certificate for the 100 shares was issued, and certificates also for the smaller numbers, the aggregate of which have already been given. The issuing and division of these certificates in this manner was evidence of an understanding that the inventions for which the capital stock was in form wholly issued, were not worth the amount agreed to be paid for them. If they had been, no satisfactory reason appears why the inventor, Bliven, should have immediately returned 200 shares to the company, and delivered 100 shares to the defendant in payment of an indebtedness of $15,000. These 100 shares nominally amounted to $50,000 which would not have been given to pay the indebtedness which has been mentioned, if the property obtained by the company had been of equal value to this stock. At least these were facts which the jury could well consider, and from which they could determine that the inventions were not only worth less than the prices agreed to be paid for them, but that it was so understood by the defendant and the other parties to these transactions. And that it was intended before the shares were issued that they should be divided and disposed of in this manner, appears by an agreement made between the defendant and A. Perry Bliven, on the 30th of September, 1884. By this agreement, precisely this division of the shares of the company was provided for, which it is reasonable to assume would not have been done, if the inventions taken by the company had been considered by the defendant of the value, or fair value, of this stock. At least one-third of the stock without any apparent consideration was returned to the company, and these 100 shares received by the defendant in payment of the proportionately small indebtedness of $15,000.

A further circumstance indicating the inventions to be of less value than the stock of the company is the fact that no patent was at any time issued for either of them, and the company accordingly acquired no exclusive right to use, employ, or vend them in its manufactories, but all other persons were equally at liberty to use and vend the inventions with this incorporation. And where that may be the case the right to the invention scarcely rises to the dignity of property. (*Gillette* v. *Bate*, 10 Abb. [N. C.] 88.)

The jury certainly had ample evidence, notwithstanding the denial of the defendant, from which they could determine that he understood at the time when these inventions were taken and the stock was issued and afterwards divided, that the company was nominally paying a much larger sum for the inventions than they in fact were worth. The defendant had been connected with two preceding corporations, having something to do with the use of these inventions, and proof was given of that fact upon the trial.

To the rulings allowing this proof, exceptions were taken on behalf of the defendant, which are now relied upon in support of the appeal, but the evidence as to the existence and business of the Bay Ridge Steamship Construction Company was entirely pertinent, for it was out of the transactions of Bliven and the defendant with that company, that the indebtedness of $15,000 arose, for which the 100 shares of stock was given by Bliven to the defendant. The evidence relating to the National Marine Engine Boiler and Manufacturing Company, whose prospectus was read upon the trial, was equally admissable so far as it tended to show the preceding dealings of the defendant with each of these inventions. It was a circumstance from which the jury might, to a slight extent certainly, infer that he had acquired such a knowledge of the inventions through his connection with these preceding companies, as to impress him with the conviction that they were not worth the prices that the company agreed to pay for them.

It was proved that he finally brought a suit against the company in which all this property was sold, realizing no more than the sum of $400. This proof was received against the objection of the defendant, and strictly it should have been excluded, for the jury could not infer in any degree that the defendant had become liable for the debts of the company, by reason of this action on his part,

or the final sale of its property. But it really did no harm in the case, for the statute required that it should be established before the action could be maintained, that the creditor had been unable to collect these judgments through the intervention of executions against the property of the company. That did appear. Executions had been issued and they were returned unsatisfied, and this evidence proving no more than the insolvency or inability of the company to pay its debts, was productive of no legal harm to the defendant. The defendant was not injured by allowing the question to be put to one of the witnesses, whether the invention was patentable, for he did not answer that they were not. His answer was, " I can't honestly say it is." Having said it was good for nothing before, I can't say it was less than good for nothing because it was not patentable. The evidence in no manner injured the defendant, and could not as it was given have affected the verdict which was rendered.

Upon the whole case consequently the judgment and the order appear to be right and they should be affirmed.

Van Brunt, P. J., and Brady, J., concurred.

Judgment and order affirmed.