### BRACKETT *v.* GRISWOLD *et al.*

(*Supreme Court, General Term, Third Department.* February 4, 1891.)

1. DECEIT—FRAUDULENT REPRESENTATIONS—EVIDENCE.
    In an action for damages against a trustee of an insolvent corporation for fraudulent representations, whereby plaintiff's intestate was induced to purchase certain of the company's notes, upon the trial of the issue as to fraudulent representations of the defendant as a conspirator with others, made directly to the purchaser, plaintiff proved that the purchaser was induced to take said notes from a third party by a statement of the treasurer of the company that the company was good, and that the notes would be paid at maturity. It appeared that said treasurer was made such without his knowledge; that he was also a cashier of a bank in New York city; that he signed certain of its obligations in his official capacity; that he was not a stockholder in the company, and had no interest therein beyond a salary of $1,000 per annum for his services; and there was no evidence that he participated in the management of the company, such acts as he performed being entirely ministerial. *Held*, that the evidence was insufficient to establish a conspiracy between the defendant and said treasurer, and that the former was not bound by the declarations of the latter to plaintiff as to the solvency of the company and the prospect of payment of the notes.

2. CONSPIRACY—EVIDENCE.
    In an action for damages in such case against one of several trustees, alleging a conspiracy between them to cheat and defraud the public, evidence of acts of defendant's co-trustees, in which he did not participate or subsequently acquiesce with guilty knowledge, is inadmissible against him to prove the formation of a conspiracy, and his connection with it.

3. SAME.
    In such case it appeared that the defendant, at the age of 24 years, was made a co-trustee with others; that he signed financial reports of the company at the request of his father, who was chiefly interested therein; that he was not present at important meetings of the board of trustees; that its principal plans and schemes were adopted and put into operation before his connection with the board of trustees, and without his participation therein. *Held* insufficient to fix a liability upon the defendant as a co-conspirator with the other trustees.

Appeal from circuit court, Essex county.

Action by Edgar T. Brackett, administrator of Samuel Bonnell, deceased, against Chester Griswold and others, trustees of an insolvent corporation, alleging a conspiracy between the defendant and said trustees to defraud the public and the plaintiff, and seeking to recover from the defendant the amount of certain notes of said company which plaintiff alleged he had been induced to take .through such representations. Defendant Griswold appeals from a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*William C. Holbrook,* for appellant. *Pond & French, (Richard L. Hand,* of counsel,) for respondent.

LANDON, J. At the close of the plaintiff's testimony it was conceded by plaintiff's counsel that all of the evidence offered on this trial was read from the printed case on the last appeal. The opinion of the court of appeals upon that case is found in 112 N. Y. 454, 20 N. E. Rep. 376. As no additional testimony was given by the plaintiff, the question is presented whether, within that opinion, the plaintiff made out a case for the consideration of the jury. The court of appeals, speaking by ANDREWS, J., said: "The question in this case turns upon the point whether the evidence proved, or tended to prove, a cause of action against the defendant for false and fraudulent representations, within the rules governing the common-law action for fraud and deceit." After stating the essential elements of such an action to be "representation, falsity, *scienter*, deception, and injury," and commenting thereon, the court declares: "In view of the settled principles governing the action for fraud and deceit by means of false pretenses, there is, upon the evidence presented in this case, an insuperable difficulty in maintaining the present judgment. There is no evidence that Bonnell, in purchasing the notes, relied upon any representations made by the defendant." Now, upon the present trial, without any additional evidence, the jury were permitted to surmount this "insuperable difficulty," and to find that Bonnell, in purchasing the notes, did rely upon representations made by the defendant. Upon the last as upon the previous trial the plaintiff undertook to show that the defendant and others entered into a conspiracy to form, and did form, the corporation upon the fictitious and fraudulent basis of large capital, resources, and flattering prospects of abundant profits, and in furtherance thereof issued a false prospectus, giving a glowing account of these pretended facts and advantages, and issued a false annual report, with the intent to cheat and defraud whoever should take its obligations. The jury, upon the former trial and upon this, have in substance found that this conspiracy was made. The notes in question, for the amount of which recovery is sought, were given by the Iron Mountains Company of Lake Champlain to the Birmingham Iron Company upon payment for a furnace, and were before maturity transferred by the Birmingham Iron Company to Bonnell, plaintiff's intestate, in payment for coal, which Bonnell sold to the Birmingham Iron Company. Before Bonnell consented to take the notes, he inquired of his customer, the Birmingham Iron Company, whether the notes were good. The Birmingham Iron Company said they were, but referred him to George Ellis, the treasurer of the maker, the Iron Mountains Company of Lake Champlain. Bonnell sent his clerk to Ellis, and Ellis said that "the company was fully responsible, that the notes were good, and would be promptly paid at maturity." Bonnell, relying upon this representation, took the notes. The court of appeals, in response to the defendants' contention that the evidence was insufficient to support the finding against the defendants of a conspiracy, or defendants' participation in it, said: "We deem it unnecessary to consider this contention. But this does not relieve the case of the difficulty that, assuming the facts to be as found, the plaintiff's case, as proved, fails, upon the ground

that Bonnell, when he took the notes, did not know of the illegal conspiracy or false representations, and consequently was not influenced thereby in making the purchase." We fail to see how the conspiracy, and the acts done in furtherance of it, can relieve the case now of the same difficulty. The plaintiff's case "as proved" failed to overcome that difficulty, and the case "as proved" is unchanged.

The court of appeals said "the case was submitted to the jury upon a false theory." We understand this to mean that it was false, because as proved there were insuperable difficulties to a recovery, which the trial court did not recognize, and which possibly might be obviated upon a new trial upon further evidence. But the trial court evidently construed this to mean that upon the case "as proved" there might be a recovery upon a true theory. We can discover no ground for supposing that the court of appeals meant that the same facts would support any recovery upon any theory. The theory adopted by the learned trial judge was that, if Ellis was a co-conspirator with the defendant in the fraudulent conspiracy, then his declaration to Bonnell that the company was fully responsible, and that the notes were good, and would be paid at maturity, was the declaration of the defendant. This question was not directly presented to the court of appeals, but that court remarks: "Ellis is not charged [in the complaint meaning] to have been a co-conspirator, and it does not appear that he had any interest as stockholder or otherwise in the Iron Mountains Company." We have examined the whole testimony, with the view to discover upon what evidence the claim that Ellis was a co-conspirator rests, and we find only this: That after the corporation was organized the board of trustees, neither Ellis nor defendant being present, appointed Ellis treasurer; that he was the cashier of a bank in New York city; that at a subsequent meeting of the executive committee, of which defendant was not a member, Ellis' salary was fixed at $1,000 per year; that his name as treasurer was printed in the prospectus; that, pursuant to the resolution of the board, he subscribed his name as treasurer to certain obligations of the company. Thus his only interest in the company was as its servant or officer, on the promise of $1,000 salary for his services. There is no evidence whatever of his knowledge of any scheme to defraud, or of his participation in any way in such a scheme, other than can be derived from the fact that he accepted the office of treasurer, and discharged the duties incident to that office. The complaint names the alleged conspirators, but does not name Ellis as one. He is not a party to the action. His representations to Bonnell were not made in any business transaction between the Iron Mountains Company and Bonnell. The complaint states, as the court of appeals take pains to point out and assume as true, "that Bonnell took the notes confiding in the general reputation of the company produced by the representations," etc., made to the public at large; thus negativing by implication the recent suggestion that Ellis made any representations in furtherance of a conspiracy. The evidence does not tend to show that Ellis was a co-conspirator, and a verdict resting upon that hypothesis cannot be upheld. The evidence of the acts of the trustees, in which Ellis in no way participated, cannot implicate him in their conspiracy, if such there was, in the absence of all evidence tending to show that he ever participated in their acts or acquiesced in any conspiracy. There is no evidence that he had any knowledge whatever of any conspiracy. The theory of the trial court was that a conspiracy between defendant and Ellis, if established, would, notwithstanding the ruling of the court of appeals, make the statement of Ellis to Bonnell's clerk admissible. There is no evidence to support that theory, and hence the ground upon which the court of appeals based the ruling is unchanged. Ellis' statement to Bonnell's clerk was inadmissible. As the judgment rests upon that statement, the case fails. The court should have granted the motion for a nonsuit.

Again, the finding by the jury that the defendant entered into a conspiracy is not supported by the evidence legitimately admissible to prove it. The acts of defendant's co-trustees, in which defendant did not participate, or subsequently acquiesce in with knowledge of their purpose, are not admissible to prove against him the formation of a conspiracy, and his connection with it. They were *res inter alios.* It may be admitted that the formation of a conspiracy, and defendant's connection with it, may be proved by circumstantial evidence, and hence that, in the attempt to prove the existence of a conspiracy, a wide range of circumstances may properly be shown, and that in determining their relevancy much must be left to the discretion of the trial court. The existence of the conspiracy, and the defendant's connection with it, must be shown before the acts done in furtherance of it become admissible. This is a rule of stringency, but sometimes the exigencies of the case justify a departure from it. *McCarney* v. *People,* 83 N. Y. 408; *Place* v. *Minster,* 65 N. Y. 105; *Indemnity Co.* v. *Gleason,* 78 N. Y. 503; *Cuyler* v. *McCartney,* 40 N. Y. 221. It is to be observed that the court of appeals has held in this case that the conspiracy is not the *gravamen* of the action, and that it was unnecessary to plead it. It follows that the only proper purpose of proving it was to lay the foundation for the admission of the statement of Ellis to Bonnell's clerk, to the end that that statement should bind the defendant as his act, because made, as alleged, by one conspirator in furtherance of the objects of the conspiracy. It is a general rule in civil cases that the court must submit to the jury the issues of fact upon which the plaintiff's right to recover depends, but that the court must itself decide the questions of fact upon which only the admissibility of evidence depends. Therefore, before the court could receive the evidence of the statement of Ellis, it was its duty to decide whether a conspiracy had been proved against defendant and Ellis. At least a *prima facie* case should have been established. *People* v. *Davis,* 56 N. Y. 95, 103; *Newlin* v. *Lyon,* 49 N. Y. 661. If such a *prima facie* case was made out, then, although the conspiracy was not the *gravamen* of the action, and it was the duty of the court to decide as to the fact in the first instance, it is plain that the defendant, if the question were subsequently submitted to the jury, would have no ground of complaint, since he might possibly secure from the jury a different finding from that made by the court. But unless a *prima facie* case was made out, then it is clear that none of the evidence touching the conspiracy ought to have been submitted to the jury. The acts and declarations of the other trustees may have tended to show a conspiracy between them. But nothing could tend to show defendant's connection with it, except his own conduct. Viewing his conduct—that is, his acts, declarations, and omissions —in the light of the conduct of his co-trustees, and we think a *prime facie* case of conspiracy against him was not established. The evidence tends, as we think, irresistibly to show that he was a boy, nominally associated with his father and the other trustees, not to participate in their counsels, but to swell their numbers, and give his father two votes. As remarked in the opinion of the court of appeals: "At the time of these transactions he was a young man twenty-four years of age, employed by the firm of John A. Griswold & Co., at Troy, and had little, if any, knowledge of mining or mining property, and was made a trustee of the Iron Mountains Company without his knowledge at the time, and signed the report of January, 1870, at the request of his father, who was largely interested in mining property, and in the manufacture and sale of iron." We may add that the articles of association of the "Iron Mountains Company of Lake Champlain" were filed in August, 1869; that the defendant did not sign them; that the first meeting of the board of trustees was held August 12, 1869, and defendant was not present; that an executive committee was then appointed, of which he was not then a member; that defendant's first act in connection with the company was to

attend a meeting of the board of trustees, December 15, 1869. Prior to that date the organization of the company, the purchase of its mining property for its entire capital stock, the plan for the return and disposition of a portion of this stock, the issue of mortgage bonds, the employment of Ellis as treasurer, the plans for the operation of the business of the company, the making of the contract with the Birmingham Iron Company upon which the notes held by plaintiff were subsequenty issued, were completed. At the meeting in question measures were taken to secure, upon mortgage of real estate and a pledge of stock and bonds, a loan of $35,000. No further act of the defendant is shown, except to sign the annual reports prepared by counsel. These the defendant signed, relying upon the representations of his father and Remington, a co-trustee, and the active promoter of the enterprise. It is true that he had previously visited the property. He was adjudged to be liable for knowingly making a false report, in violation of section 15, c. 40, Laws 1848, upon the evidence which is reproduced in this case. *Blake* v. *Griswold*, 103 N. Y. 429, 9 N. E. Rep. 434. This adjudication was based upon the finding that he knew the mining property was not worth $2,000,000; and, since all the capital stock of the company was issued for it, he knew the capital stock was not fully paid in. This is very different from the proposition that, in his absence and without consultation with him, and before he knew that he was a trustee, the other trustees had, with the intent to cheat the public, formed a conspiracy, into which he subsequently entered with knowledge. The records of the corporation are evidence of corporate acts, and, so far as a legal liability devolves personally upon a trustee because of corporate acts, the records are competent evidence against him. But a conspiracy is the result of intentional wrong, and, in the nature of things, the wrong intent of a party can only be shown by his own acts or omissions indicating his actual purpose. Hence these records of meetings, in which the defendant did not participate, cannot show his intent, unless it is shown by some affirmative evidence that they were at least brought to his knowledge. Hence also the inference of a conspiracy, which they are relied upon to justify, is no inference against the defendant. It was the duty of the court not only thus to decide, but to give the proper effect to the decision. To submit the whole mass of evidence to the jury for them first to determine as to its competency, and next as to the effect of such as they should deem competent, was to relegate to them the decision of questions both of the law and the fact,—questions which in this case tax the ability of the judicial mind to keep properly separated. Of course, the jury would confound both, and the more readily if they thought that the plaintiff had been injured. The judgment must be reversed with costs. It is apparent that a new trial cannot result in a more favorable presentation of the plaintiff's case. We therefore do not grant a new trial, but dismiss the complaint on the merits, with costs. All concur.