86 57
155a 475

86 57
42ap394

86 57
s45ap245

THE WHITE CORBIN AND COMPANY, Respondent, *v.* WILLIAM MARTIN JONES, Appellant.

*Corporate stock issued for property under chapter 333 of 1853 — proof necessary to enforce the liability of a stockholder under section 10 of chapter 40 of 1848 — purchaser of stock, liable if the certificate filed be false — motion for a new trial — affidavits of jurors as to their erroneous views of the law.*

Where the trustees of a corporation have issued stock in payment of the purchase price of property necessary for its business, under the provisions of chapter 333 of the Laws of 1853, and a creditor of the corporation attempts to enforce the individual liability of a stockholder thereof, under section 10 of chapter 40 of the Laws of 1848, such creditor is bound to prove, *first*, that the stock issued exceeded in amount the value of the property, in exchange for which it was issued, and, *second*, that the trustees at the time deliberately, and with knowledge of the real value of the property, overvalued it, and paid for it in stock an amount which they knew was in excess of its actual value, and that by reason thereof the assets of the company were deliberately impaired.

The creditor must also show the value of the property at the time the stock was issued therefor.

Any testimony, such as proof of conversations and acts of parties who were at the same time directors of the corporation and owners of the property purchased by its stock, which goes to show what was the true value of the property at that time or to show what contract was actually made by the trustees with the owners of the property bought; what consideration was paid to them and the way in which the consideration was paid, is competent as bearing upon the intention with which the trustees paid in stock more than the value of the property.

Under section 10 of chapter 40 of the Laws of 1848, every person who buys stock of a manufacturing corporation is liable for the debts of the corporation until the certificate provided for in that section is filed.

When the stock of a manufacturing corporation is issued under chapter 333 of the Laws of 1853 it becomes paid-up stock, not necessarily by the filing of a certificate but by the filing of a certificate which is true. Any one who has occasion to buy stock which is issued in that way is bound not only to see that the certificate has been filed, but, at his peril, to ascertain whether or not the certificate represents the truth, and whether the property which has been taken in payment of the stock is worth the stock which had been delivered for it.

A motion for a new trial of a case on the ground of newly-discovered evidence, will not be granted where there is no statement in the moving papers showing that the newly-discovered evidence is of importance, and where there is no probability that the newly-discovered evidence would, if given on the trial, have changed the result of the trial.

The affidavits of jurors, offered to establish the fact that their verdict proceeded upon a mistaken view of the law, cannot be read; nor can such facts be established by the declarations of the jurors made, after the verdict has been rendered, to other persons who embody them in an affidavit used upon a motion for a new trial.

APPEAL by the defendant, William Martin Jones, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 16th day of October, 1894, upon the verdict of a jury rendered after a trial at the Monroe Circuit, and also from an order entered in said clerk's office on the 16th day of October, 1894, denying the defendant's motion for a new trial made upon a case containing exceptions, and on the ground of surprise and newly-discovered evidence.

*W. Martin Jones*, appellant, in person.

*David Hays*, for the respondent.

Judgment and order affirmed, on opinion of RUMSEY, J., at Circuit.

Present — DWIGHT, P. J., LEWIS, BRADLEY and WARD, JJ.

The opinion was as follows:
RUMSEY, J.:

This action was brought against the defendant, who was a stockholder in the Rochester Printing and Lithographing Company, to recover a debt of that company by reason of the defendant's liability as a stockholder, under section 10 of the Manufacturing Corporations Act (Laws of 1848, chap. 40, § 10). The language of that section is: "All the stockholders of every company incorporated under this act, shall be severally individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in."

The plaintiff, which was a creditor of the Rochester Printing and Lithographing Company, claimed that the liability of the defendant existed, because at the time of the organization of the company

the stock was issued in payment for property sold to the company at a fraudulent overvaluation, and for that reason the stock was not in fact fully paid stock. The defendant himself, as was conceded, was no party to the fraudulent transaction, and did not become a stockholder until a considerable time after the organization of the company.

By chapter 333 of the Laws of 1853, the trustees of such a corporation were permitted to purchase the property necessary for their business, and issue stock to the amount of the value thereof in payment therefor. When that has been done, if one who is a creditor of the corporation, tries to insist upon the individual liability of the stockholder under section 10 of chapter 40 of the Laws of 1848, he is bound to prove, *first*, that the stock issued exceeded in amount the value of the property in exchange for which it was issued; and, *second*, that the trustees deliberately and with knowledge of the real value of the property, overvalued it, and paid in stock for it an amount which they knew was in excess of its actual value. (*Lake Superior Iron Co.* v. *Drexel*, 90 N. Y. 87, 92.)

It will be observed that the transactions, which are to be investigated to enable the plaintiff to establish these facts, must have taken place at the time when the property was bought and stock issued in payment for it, and the creditor is bound to establish that at that time there was an overvaluation to the knowledge of the trustees, by which the assets of the company were deliberately sacrificed. It follows that the evidence must be directed to the occurrences of that time, for those occurrences are the ones to be explained. The plaintiff must show the value of the property at that time, and he must also show by competent evidence that the trustees, knowing the actual value, intentionally overvalued it, and issued stock for it at the overvaluation. Any testimony which goes to show what was the true value of the property at that time is competent. So, also, it is competent to show what contract was actually made by the trustees with the owners of the property bought, and what consideration was paid to them, and the way in which the consideration was paid, because all those things are material as bearing upon the intention with which they paid in stock more than the value of the property. So, also, the knowledge of the trustees, and their deliberate intention at that time to buy the

property at a fraudulent overvaluation must be proven, and any testimony which is competent upon that point is competent in the action.

These considerations necessarily dispose of nearly all the exceptions which were taken in the case as to the admission of evidence. For instance, Pitt, upon his examination, was asked what was his opinion of the value of the assets of the Willard, Pitt & Moore business, which were turned over to the corporation, at the time when they were so turned over. That evidence called for precisely one of the facts which the Court of Appeals says must be proved by the plaintiff to establish his cause of action. It called for the opinion of the witness as to the value of certain assets which were turned over, at the time when they were turned over.

There were several exceptions to the conversations which were had between the different directors at the time when the property was bought and stock turned out for it. The persons between whom these conversations were had were owners of the property bought, and directors of the company as well. It was necessary for the plaintiff to show that these people knew at the time that the property was overvalued, and what was said and done at the time when they entered into the transaction was clearly competent to show not only their knowledge which they expressed at that time, but also their intention. (*Loos* v. *Wilkinson*, 110 N. Y. 195, 211, and cases cited.)

So, also, it was competent to show the disposition which was made of the assets, as bearing upon the good faith of the whole transaction on the part of the trustees.

It was claimed on behalf of the defendant, that the good-will of the several partnerships which were turned over to the Rochester Printing and Lithographing Company, was of such value that, in addition to the actual value of the assets of those establishments, it was equal to the amount of stock which was paid for them. To meet this claim on the part of the defendant, it was competent for the plaintiff to show that these partnerships and corporations which were consolidated into the Rochester Printing and Lithographing Company were doing a losing business, because that bore directly upon the value of their good-will. The other exceptions which were taken are covered by the considerations hereinbefore expressed.

It is claimed by the defendant that no liability against him can exist under this section, because it is not alleged or proved that he was a party to the overvaluation, but, on the contrary, it appears that he bought the stock after the property had been purchased and the stock had been issued to pay for it, and that the liability can only be based upon the fraud of the defendant. It would perhaps be sufficient to say upon this subject, that no such point is raised by any motion made by the defendant in the case. If it had been, it is possible that evidence might have been given to charge the defendant with a knowledge of the condition of affairs at the time he bought the stock.

But passing that point, I am of opinion that the liability existed against every one who purchased stock issued in the same way in which this was issued, without regard to any knowledge he may have had upon the subject. Section 10 of the statute which has been quoted above, establishes a liability against "all stockholders." Under that section, every man who bought stock of a manufacturing corporation was liable for the debts of the company until the certificate provided in that section shall have been filed. All that it was necessary for him to know, to find out whether or not he was liable, was to ascertain whether the certificate had been filed. If it had, he was not liable, and if it had not, he was liable.

By the law of 1853, a new power was granted to the trustees. It was no longer necessary for them to require the payment in money of the stock which was issued. They might, under that statute, issue stock to the value of the property bought, in payment for such property, and in the certificate which they filed that the stock was paid up, the manner of payment must be reported according to the fact. (Laws of 1853, chap. 333.) When stock was issued under that permission of the statute, it became paid-up stock, not necessarily by the filing of the certificate, but by the filing of a certificate which was true. Any one who had occasion to buy stock issued in that way, was bound not only to see that the certificate had been filed, but was bound, at his peril, to ascertain whether or not the certificate represented the truth, and that the property which had been taken in payment of the stock was worth the stock which had been delivered for it. This construction of the statute is, it seems to me, plain and clear It was the one which was adopted

by the judge in the case of *Lake Superior Iron Company* v. *Drexel* (*supra*), and it was the only construction upon which that case could have been submitted to the jury. I can find in no case which has been reported, any suggestion that a stockholder who buys stock issued in this way is not liable, if the stock was issued at an overvaluation.

In several of the cases cited by the defendant's counsel the defendant himself was one of the parties consenting to the over-valuation, and in these cases the court says that it was necessary to prove that the defendant knew of it. But that was said because the defendant was one of the parties to the transaction. Undoubtedly the liability thus created is a grave one, and it may in some cases, as possibly it did in this case, work an injustice to the individual stockholder. But it is within the plain construction of the statute, and, therefore, it cannot be escaped.

So far as the motion for a new trial in this case is made upon the ground of newly-discovered evidence, the papers are fatally defective. There is no statement anywhere in the papers of what the newly-discovered evidence is, except the paper which is said to be in the handwriting of Pitt stating that there was a small amount of money on hand when a dividend was declared, at a time when he swore there was no money in the treasury of the company. But if it could be assumed that this paper established that fact, it would be a matter of no importance whatever. If the fact had appeared, according to the statement in the paper, there is no probability that it would have changed the result of the trial, and if it should be made to appear upon a new trial, I cannot see how it would have any effect whatever. There is no statement of any other evidence which was newly discovered.

The defendant also asks for a new trial upon the ground that the jury misunderstood the charge of the court, and that their verdict was based upon such a misunderstanding. To this part of the motion there are several serious objections.

In the first place there is no competent evidence to prove the fact. If the affidavits of the jurors had been offered to establish that their verdict proceeded upon a mistaken view of the law they could not have been read. (*Clum* v. *Smith*, 5 Hill, 560.) Nor can such facts be established by the declarations of the jurors, made

after the verdict had been rendered, to other persons who embody them in an affidavit. (*Mitchell* v. *Carter*, 14 Hun, 448.) But passing that objection, it is very clear that no intelligent person could have misunderstood the direction given the jury. The charge upon the point referred to was clear and was reiterated, and it appears, from the testimony of one of the jurors, not only that he made no such declaration as is stated in the affidavits, but that the jury did understand the charge of the court and based their verdict upon the directions which they received.